Sarah Sugarwater, Administratrix of Estate of Abram Dante, v. Fred W. Fleming et al., Receivers of Kansas City Railways Company, Appellants.—293 S. W. 111.

Court en Banc, February 15, 1927.

**1. NEGLIGENCE: Collision with Street Car: Case for Plaintiff.** The undisputed facts being that the plaintiff sat on the curb on the west side of the street and waited for a street car from the south; that he was obliged to cross both tracks of the double-track railway, to board the north-bound car; that he had a tow sack in his hand which he waved to the northbound car as it approached; that he passed across the west track after a southbound car had passed on, and that he collided with the northbound car on the east track, substantial evidence that he had risen to his feet and, after the southbound car had passed on, was crossing the street when he waved his tow sack to the northbound car, which was then about one-third or one-half the length of the 400-foot block from him; that he supposed that the northbound car was approaching at its usual speed, but in fact it was coming at an excessive speed; that he hurried across the tracks and had plenty of time to cross, if the northbound car had been coming at its usual speed; that he misjudged its speed, and for that reason did not get across the east track, but was struck by the front of the northbound car, is sufficient to sustain a verdict, rendered under appropriate allegations of such facts and in pursuance to correct instructions.

**2. ———: Excessive Speed.** Testimony by defendants' witnesses that the usual speed of street cars at the point where plaintiff was struck was ten to fifteen miles an hour, and that the car which struck him was going very fast down hill; and testimony by plaintiff that his impression was that the car was going about the way they always go, and that he did not know what struck him, and testimony of his witnesses that it was running at a speed of forty miles an hour, and was going exceedingly fast, is sufficiently substantial to submit the issue of excessive speed to the jury.

3.. ———: **Contributory: Walking Behind Another Car into Danger: Excessive Speed.** A demurrer should not be sustained on the theory that plaintiff was guilty of contributory negligence, in that he saw a street car approaching and went behind another car traveling in the opposite direction and was struck by the car on the adjoining track, where the evidence shows that he did nothing of the kind, but waited for the southbound car to pass, until it no longer obstructed his view of the northbound car, then waved his tow sack as he started across the tracks, at a time when the northbound car was at such a distance that had it been traveling at the usual speed he could have crossed in safety, and that he failed to get across because it was traveling at an excessive speed. ·He had a right to assume that the car would run at a speed consistent with ordinary care, and would stop for him on his signal, and it was for the jury to say whether he was negligent in misjudging the speed.

4. **JUDICIAL ADMISSION: Contradictory Deposition.** Statements made by plaintiff in a former deposition may be used to contradict his testimony at the trial, but they are not a judicial admission against interest; and even if squarely contradictory, are not conclusive against him, but it still remains a question for the jury to determine whether his testimony or deposition is true.

5. **NEGLIGENCE: Time to Cross Street: Belief.** A pedestrian, about to cross a street for the purpose of boarding a street car, is presumed to have been in the exercise of ordinary care unless the contrary is shown, and the very fact that he started across is evidence that he believed he could cross ahead of the oncoming car.

6. ———: ———: **Test of Belief.** A pedestrian is not negligent in attempting to cross a street in front of an oncoming street car if he believes he can cross in safety and has reason to believe it from the facts as they appear to him at the time.

7. ———: **Instruction: Omitting Contributory Negligence.** An instruction for defendant telling the jury that plaintiff is not entitled to recover if he was negligent in certain enumerated respects should be refused if it fails to require them to find that such negligence contributed to his injury.

8. **REBUTTAL.** There is no error in allowing plaintiff to testify in rebuttal in explanation of the accident if all he testifies to when recalled adds nothing to what he said when testifying in chief.

Corpus Juris-Cyc. References: **Appeal and Error,** 4 C. J., Section 2944, p. 962, n. 45. **Carriers,** 10 C. J., Section 1463, p. 1074, n. 24; Section 1477, p. 1089, n. 8; Section 1489, p. 1105, n. 85; Section 1493, p. 1114, n. 20; Section 1517, p. 1152, n. 38; Section 1522, p. 1157, n. 76; Section 1525, p. 1165, n. 21. **Witnesses,** 40 Cyc., p. 2762, n. 3.

Appeal from Jackson Circuit Court.—*Hon. Nelson E. Johnson,* Judge.

AFFIRMED.

*Charles U. Sadler, John R. Moberly* and *Roscoe P. Conkling* for appellants.

(1) The court erred in overruling the demurrer interposed at the close of plaintiff's evidence and renewed at the close of all the evidence. (a) There was no evidence of excessive speed shown.

Pope v. Railroad, 242 Mo. 232; Laun v. Ry. Co., 216 Mo. 563; Petty v. Ry. Co., 179 Mo. 666; Theobold v. Transit Co., 119 Mo. 432; Case v. Bridge Co., 189 S. W. 391; Blythe v. Ry. Co., 211 S. W. 697; Green v. Ry. Co., 192 Mo. 131; State ex rel. v. Reynolds, 233 S. W. 219; Oglesby v. Ry. Co., 177 Mo. 272; Butler v. United Rys. Co., 238 S. W. 1077. (b)  There was no evidence that excessive speed was the proximate cause of the injury.  King v. Ry., 211 Mo. 1; Bludorn v. Ry., 121 Mo. 258; Blythe v. Ry. Co., 211 S. W. 697. (c)  Even if car was running at excessive speed the contributory negligence of respondent bars his right to recover.  McCreery v. Ry. Co., 231 Mo. 18; Giardina v. Railway, 185 Mo. 350; Hornstein v. Railway, 195 Mo. 440; Weber v. Railway, 100 Mo. 194; Hogan v. Railway, 150 Mo. 36; Moore v. Railway, 146 Mo. 405; Corcoran v. Railway, 105 Mo. 403; Tesch v. Railway, 53 L. R. A. 618; Dunn v. Railway, 98 Mo. 652; Laun v. Railway, 216 Mo. 563; Boyd v. Railway, 105 Mo. 371; Moody v. Railway, 68 Mo. 470; Holland v. Railway, 210 Mo. 350; Green v. Railway, 192 Mo. 131; Kinlen v. Railway, 216 Mo. 164; Mockowick v. Railway, 196 Mo. 570; Boring v. Railway, 194 Mo. 549; Pope v. Railway, 242 Mo. 239; Reeves v. Railway, 251 Mo. 177; Keele v. Ry., 258 Mo. 78. (d) There was no evidence that respondent relied upon the car being run at the usual rate of speed.  Mockowik v. Railway, 196 Mo. 570; Reno v. Railway, 180 Mo. 483; Nixon v. Railway, 141 Mo. 439; Bragg v. Railway, 192 Mo. 331. (2)  The court erred in giving instruction numbered 1 asked by respondent. (a)  There was no evidence upon which to base it.  Steel v. Ry. Co., 265 Mo. 110; Oglesby v. Ry. Co., 177 Mo. 274; Jordan v. Transit Co., 202 Mo. 418; Ralling v. Frisco, 175 S. W. 935; Boyd v. Ry. Co., 236 Mo. 54. (b)  It broadens issues made by pleadings.  Hall v. Coal & Coke Co., 260 Mo. 351; Davidson v. Transit Co., 212 Mo. 352; Roscoe v. Ry. Co., 202 Mo. 576. (3)  The court erred in refusing to give instruction lettered J asked by appellants.

*Henry S. Conrad, T. E. Durham* and *Hale Houts* for respondent.

(1)  Plaintiff was entitled to recover.  Montague v. Ry. Co., 264 S. W. 815. (a)  It is said that there was no evidence tending to prove that the car in question was being operated "at an excessive, dangerous or unusual rate of speed."  It is contended that the testimony of witness Shepard, to the effect that the car in question, at the time in question, was traveling at a rate of forty miles an hour as against the customary speed of twelve, is to be disregarded, for the reason that he is shown not to have been qualified.  The testimony of the witness shows that he was unusually conversant as to the question of speed.  However, it is a rule in this state that a witness

need have no qualification in order to state an opinion as to speed. State ex rel. v. Trimble, 250 S. W. 381; Stotler v. Railroad, 100 Mo. 128; State v. Watson, 216 Mo. 420; Moon v. Transit Co., 237 Mo. 431. Mrs. Atterberry's testimony was none-the-less competent by reason of the fact that it was not estimated in miles. State ex rel. v. Trimble, supra; Anderson v. Wells, 261 S. W. 954. (b) It is next urged that there was shown no causal connection between excessive speed and the accident. There was therefore evidence of a variation in speed as between the proper speed and speed shown of 28 miles an hour. Counsel assert that it does not appear that the accident would not have occurred even had the car been operated at the customary speed. An analysis of the testimony shows this contention to be unsound. Had the customary speed been observed plaintiff would have reached a place of safety by a very wide margin. There is no merit in the contention that the evidence failed to show proximate cause. Mason v. United Rys., 246 S. W. 23. (c) It is next insisted that plaintiff, as a matter of law, was chargeable with negligence barring his recovery. It is said that although he saw the northbound car coming he plunged from behind the southbound car as it passed the northbound car. It is clear from plaintiff's testimony that he did not jump from behind the southbound car into the northbound car, but that he waited for the southbound car to pass and then flagged the northbound car; that at this time the northbound car was a half block away from him. From his observation of the car at that point he took it to be "going the way cars go all the time." Not until then did he start across the track. He denied that he jumped and stated that he thought he had time to get across. The case is clearly within the class of cases wherein it is recognized that a traveler or pedestrian may rely upon the observance of a rate or speed or mode of operation fixed either by law or custom, and that where he exercises ordinary care in so relying, he is entitled to recover where the legal or customary speed or mode of operation is not observed, and that non-observance causes him injury. Harrington v. Dunham, 273 Mo. 414; Mason v. United Rys., 246 S. W. 318; Strauchon v. Ry. Co., 232 Mo. 587. (d) Upon the foregoing authorities we believe it clear that the question of plaintiff's right to rely upon the observance of the customary speed and the question of whether he exercised ordinary care in his own behalf were for the jury. Moreover, having submitted the questions by their instructions numbered K, L, O, and others, appellants are estopped to assert that it was not a question for the jury. Torrence v. Pryor, 210 S. W. 432; State ex rel. v. Allen, 272 S. W. 925. (2) Plaintiff's Instruction 1 submitted the theory charged in the petition and upon evidence which authorized the submission of the case to the jury. In respect to the insistence that the evidence was insufficient to author-

ize a submission of the reliance by plaintiff upon the observance of the customary speed of about twelve miles is completely answered by the observation that defendants by their instructions submitted to the jury the question of whether plaintiff had a right to believe that he could cross in front of the car. Torrence v. Pryor, 210 S. W. 432; State ex rel. v. Allen, 272 S. W. 925; Kinlen v. Railroad, 216 Mo. 167. (3) The mere reading of defendants' refused Instruction J is sufficient to convince that it was properly refused. It authorizes the jury to find for defendants if they should find certain acts and conduct on the part of plaintiff, without requiring them to find that plaintiff was negligent in the premises. Harrington v. Dunham, 273 Mo. 427. Moreover the subject-matter of the instruction insofar as may have been proper was covered by other instructions asked by defendants and given by the court. Turnbow v. Rys. Co., 277 Mo. 660.

WHITE, J.—In the Circuit Court of Jackson County Abram Dante recovered judgment for $20,000 against defendants, for injuries received by him on account of alleged negligence of defendants' employees in operating a street car in Kansas City. On suggestion in this court of the death of Abram Dante the action was revived in the name of his administratrix, Sarah Sugarwater.

Dante was injured at the corner of Holmes Street and Grauman Avenue in Kansas City. Holmes Street runs north and south and Grauman Avenue crosses it, running east and west. Two street car tracks on which the defendants operated cars ran on Holmes Street. On August 1, 1921, Dante intended to take the northbound car on Holmes Street, and approached from the west on the south side of Grauman Avenue. He reached the corner of Grauman and Holmes and sat down on the curb, to await a car which he expected from the south. He would have to cross over the near track and then the further track to be in position to board the car which he expected. While he was waiting a car approached from the north, passed on to the south, and the car Dante expected to board appeared coming from the south. He crossed over the west track, on to the east track, and was struck by the northbound car which he intended to take. He was rendered insensible for several days, one foot was amputated below the ankle and one leg below the knee. He suffered other injuries described.

The petition alleged as acts of negligence that the street car was running at an excessive rate of speed; that defendants' employees in charge of the car, just prior to the accident and at the time, failed to keep a vigilant watch ahead for the plaintiff and other pedestrians who might be moving towards the track; that in disregard of plaintiff's safety they failed to stop or to slacken the speed

of the car, when by the exercise of ordinary care they could have stopped or slackened the speed so as to have avoided striking the plaintiff; that it was customary and usual, at the time and place plaintiff was injured, for the employees of the defendant operating cars to run them at a speed of about twelve miles an hour, and that such fact was known to the plaintiff, and when he signalled defendants' motorman and started across Holmes Street at the time and place mentioned, he relied upon the speed of the car being twelve miles an hour, and if the said car had been running at about twelve miles an hour he could have crossed the street in safety, but the car at the said time was running at a speed far in excess of twelve miles an hour and ran against plaintiff while he was in the exercise of ordinary care, before he was able to cross the street.

The answer, after a general denial, alleges that if the plaintiff received injuries at the time and place alleged in the petition it was because of his own negligence and because of his failure to exercise ordinary care in starting across the street car track when by the exercise of ordinary care he could have seen the street car approaching and should have known that he could not cross the street car track safely. An ordinance of Kansas City was pleaded and introduced in evidence limiting the speed of such cars to twelve miles an hour.

I. The main point presented for reversal and argued at length by appellant is that the evidence was insufficient to submit the case to the jury. A demurrer was offered at the close of the evidence, which was overruled.

**Demurrer to Evidence.**

Some incidents in connection with the injury are undisputed. That Dante sat on the curb and waited for a car from the south, and that he would be obliged to cross both tracks in order to board the car he expected; that he had a tow sack in his hand which he waved to the northbound car as it approached; that he passed across the southbound track after the southbound car had passed on, and he collided with the northbound car which he had expected to take.

The facts in dispute are: where the southbound car passed the northbound car; at what point did the northbound car come in contact with the plaintiff as he attempted to cross, and when, with reference to the passing of the southbound car, did Dante signal the northbound car? It is the theory of the defendant that those two cars passed each other just a few feet south of the point of collision; that Dante waited for the southbound car to pass, rushed behind it as it passed, and on to the track in front of the other car, which then struck him; that he waved his sack in signal to the northbound car before the southbound car passed.

The theory of the plaintiff is that Dante had risen to his feet and after the southbound car had passed on he was crossing the street

when he waved his tow sack to the northbound car which was at about the middle of the block to the south; that then he hurried across the tracks and had plenty of time to cross, if the northbound car had been coming at something near its usual rate of speed; that Dante misjudged its speed and for that reason did not get across before he was struck.

It was the theory of defendants that Dante ran into the side or corner of the approaching car. It is the theory of the plaintiff that he got on to the track and was struck by the front of the car.

Manifestly, if the plaintiff's theory in each detail is supported by substantial evidence the finding of the jury would be conclusive as to the several facts claimed.

Dante himself had been in this country many years, but had great difficulty in making himself understood, and in understanding the questions which were asked him. His evidence is to be considered in the light of the poverty of his vocabulary in English, and his difficulty in understanding what was asked him. He described the situation thus:

"A. Yes, I want a car down town, but when I saw the car coming up I got up and then it passes me the car from town.

"Q. From the south? A. And then I just took my sack, and I go to pass the track, I want to come to town; in this time comes the car up the middle of the block, when I flagged them; I hold my hand up and I got a sack in it and I hold it up, and the car is coming pretty near a half a block and *when they see you all the time the car will stop on Grauman Avenue,* and I go, I walk past when— that's all; I don't know how the accident came. . . . .

"Q. Where was this car that you were going to get on when the car going south passed you? A. It was going past and I got up and when I am standing the car is going past me, and this car coming to town she leaves 28th Street, and she was getting in the middle between, in the middle of the block, and I hold my hand to stop the car, and I am going past the track."

He was examined and cross-examined at great length about the matters and at times made conflicting statements which appear to show a misunderstanding of what was asked. The defendant offered in evidence, as a part of his cross-examination, his former deposition which conflicts with his statements.

Twenty-eight Street is the first street south of Grauman Avenue, and its distance from Grauman was agreed to be 400 feet.

One Mrs. M. B. Atteberry lived on the west side of Holmes Street at the corner of Grauman. Her house fronted Holmes. She was sitting on the front porch of her home when the injury occurred. She was almost opposite the point of collision; the witness in best position to observe how it occurred. She testified:

"Q. Mrs. Atteberry, tell the jury what you saw there of that accident? A. Well, the southbound car, he was sitting there watching for it to go by and when he seen it go by he got up to go across while the other car was coming, going—was coming awful fast—very fast. . . .

"Q. Did you see him wave his sack? A. Yes sir.

"Q. Where was the southbound car at the time you saw him wave the sack? A. *Well, the southbound car had passed.*

"Q. And did you see Mr. Dante then start to cross the street? A. Yes, sir.

"Q. When he started across the street about how far back up in the block would you say the northbound car was? A. Well, indeed, I couldn't tell you how far it was, it was coming so fast. . . .

"Q. You don't know; well, as a matter of fact the northbound car was obstructed from you by the southbound car anyway, wasn't it? A. No, sir; the southbound had passed.

"Q. Well the southbound car passed the northbound car right there in front of your house? A. No.

"Q. Where did they pass? A. Well the northbound car was quite a ways up above—or the southbound car quite a ways up above the northbound car coming.

"Q. What part of the street car did Mr. Dante come in contact with when he got there? A. The front of it.

"Q. Did you see this car coming all the time—you saw this northbound car coming all the time? A. I saw it coming.

"Q. Where was it when you first saw it? A. You mean—

"Q. Did you see it as far south as 28th street? A. You mean the southbound car?

"Q. No, I am talking about the northbound car? A. The northbound car, well, I would judge it was coming about one-third of the way from 28th.

"Q. It had covered one-third of the block from 28th to Grauman when you saw it? A. About two-thirds from 28th.

"Q. Two-thirds of the way from 28th? A. Yes, sir.

"Q. Then it was within one-third of a block of Grauman Avenue when you first saw it? A. I should judge so.

"Q. And at that time had Mr. Dante arisen from the place where he was seated on the terrace? A. Yes sir.

"Q. And where was he at that time when you first saw the street car? A. *Why, he was trying to cross over to the car line.* . . .

"Q. Yes. All right. Now, just tell me exactly, as near as you can, of course, where he was at the time he raised his sack up in the air? A. Well, he had started across from the walk.

"Q. Started across from the walk? A. Yes, sir.

"Q. Was he in the street then? A. Yes, sir.

"Q. Had you seen the northbound car at that time? A. Well, I couldn't say."

One C. W. Shepard, a police officer, was on the northbound car which struck the plaintiff. He testified for plaintiff. In cross-examination, the defendant introduced a statement made by him which contained this: "When the car I was on was about half way between Grauman and 28th Street, I noticed a man out in Holmes Street near the southbound car track, and on the north side of Grauman about 15 or 20 feet; he was walking to the northeast." The man mentioned appears to have been the plaintiff.

Mrs. R. S. McMahon lived on Holmes Street just next door south of Mrs. Atteberry. She was sitting at the front window and saw the incident, and was a witness for defendant. Her house was a little more than sixty feet south of Grauman Avenue. She saw the southbound car pass and saw the northbound car strike Dante. This question and this answer appear in her examination:

"Q. Did you see him come in contact with the street car? A. I saw him run and he disappeared *in front* of the car—the northbound car coming to town."

She was about as near to Holmes Street as she was to the street car track on which he was struck. If he disappeared in front of the car when he was struck he could not have run into the corner or the side.

This was substantial evidence from which the jury might reasonably find that after the southbound car passed him Dante started to cross and was in the street waving his sack at the time the northbound car was near the middle of the block between Grauman and 28th Street—at least a third of that distance—and that he was struck while on the track in front of the car and that he did not strike it in the side.

The defendant introduced evidence to show that the two cars passed each other almost in front of Mrs. Atteberry's house, and that Dante struck the car on the corner or side.

Mrs. McMahon, while testifying strongly for the defendant, said among other things that Dante waved to the northbound car *after* the southbound car had passed him.

Shepard, the police officer, testified that the usual speed of the cars at that point, going towards town, was about twelve miles per hour. Defendants' witnesses testified that the usual speed at that point was ten to fifteen miles an hour. Dante testified that he thought the cars usually went about fifteen miles an hour. Shepard said that on that morning the motorman was throwing his lever on and off, and the car was weaving back and forth. He expressed it as his judgment that it was going at the rate of about forty miles an hour. Mrs. Atteberry testified that it was going faster than cars

usually run; that it was about twice as fast as usual. That evidence was stricken out by the court. But enough remained to indicate that she thought the car was going exceedingly fast.

Mrs. McMahon testified that she thought the car was going at about the usual rate of speed, but on cross-examination a statement was introduced, which she admitted signing, in which she said the car was going very fast down hill.

This evidence was sufficient to authorize a finding that the car was going at a much faster rate of speed than usual.

On being recalled Dante testified that the car was going about the way they always go at that time. That was his impression of the rate of speed of the car when he saw it coming. His testimony shows that he did not know what struck him. He lost consciousness and did not revive for several days.

The appellant claims that the demurrer to the evidence should have been sustained on the ground that there was no testimony tending to prove an excessive speed. We think the evidence above mentioned is sufficient to submit that issue.

The theory of recovery on which the case was submitted to the jury was that the plaintiff had a right to rely upon the car moving at the usual rate of speed, and that the defendant was negligent in that respect. It is admitted that the motorman who operated the car was dead at the time of the trial.

It is further claimed by appellants that the uncontradicted evidence shows that Dante was never in front of the car. The evidence set out above amply shows that he was. Mrs. McMahon testified enough to submit that issue.

II. It is urged that Dante was guilty of contributory negligence as a matter of law, and therefore the demurrer to the evidence should have been sustained. The argument is that he saw **Contributory** the street car approaching, and knowing of its ap-**Negligence.** proach he went behind another car coming from the opposite direction and plunged headlong into danger.

That is an assumption of a disputed fact. The evidence quoted above tends to show that he did nothing of the kind; that he waited for the southbound car to pass, until it no longer obstructed his view of the car he intended to take; that then he waved his tow sack as he started across the street, and the car was at such a distance that, traveling at the usual rate of speed he could easily have made it across in safety, and that he failed to get across because of the excessive speed; that the car reached the point of collision in approximately half the time it would have reached it if going at the regular speed. If the motorman had been watching for pedestrians crossing the street, as it was his duty to do, and if the south-

bound car had passed on, as the evidence tends to show it did, so that he could see the plaintiff a third of a block away, he could easily have checked his speed so as to avoid the collision. All the evidence is to the effect that the speed was not sensibly* checked until after the collision. The only excuse offered for the failure of the motorman to see Dante in time to check the speed was that Dante was obscured by the southbound car, and was not seen by him until he ran behind it and on to the track. The evidence set out above is sufficient to submit to the jury whether that is true. They could easily find that Dante was in the street waving a sack after the southbound car had passed, in full view of the approaching car when it was one-third of a block away. These acts of defendants' motorman were not submitted to the jury as evidence of his negligence. They are mentioned here to explain plaintiff's conduct. He had a right to presume that the car would run at a rate of speed consistent with ordinary care, and would stop for him, on his signal. [Harrington v. Dunham, 273 Mo. 414, and cases cited.] It was for the jury to say whether he was negligent in misjudging the speed of the car. [Strauchon v. Railroad, 232 Mo. l. c. 591-592.]

III. It is suggested that the plaintiff was concluded by statements in his deposition on the theory that that was a judicial admission against interest. Upon reading that deposition we do **Judicial Admission.** not find that it clearly admits the facts claimed for it by the appellant. But if it did it would not be conclusive. It was offered by the defendant in contradiction of his testimony. If it squarely contradicted his testimony it was a question for the jury to say whether his testimony was the truth or whether it was discredited by his deposition.

IV. The appellant assigns error to the giving of instruction numbered one, which submits the case on the theory mentioned, that the car was running at an unusual rate of speed and that the plaintiff relying upon its going at the usual rate of speed misjudged its speed and was struck while using ordinary care for his safety. **Instruction.** The instruction is of some length. The appellant quotes portions to which it objects, one of which is as follows: . . . "and that before entering or attempting to enter upon said northbound track and in the line of said northbound car plaintiff looked for said northbound car, and upon seeing same, if he did see it, believed he had time to cross said track in safety and without being struck by said car."

Appellant says there is not a scintilla of testimony that the plaintiff believed he had time to cross ahead of the car. The plaintiff was presumed to be in the exercise of ordinary care unless the contrary

is shown. We cannot assume that he intended to commit suicide.
The fact that he started across is evidence that
**Crossing Street.** he believed he could cross. From the evidence he
might reasonably have thought so. He might have been grossly mistaken and the jury might have thought that he had no reason to believe that he could cross. That is another question.

It is further argued that it was not sufficient for him to believe that he could cross in safety, but the jury must go further and find, from the facts developed at the trial, that he was justified in so believing. This is the test of the plaintiff's negligence: He was not negligent if he believed he could cross in safety, and had reason to believe it from the facts as they appeared to him at the time. It was then a question for the jury whether he was negligent in attempting to cross.

A further part of the instruction is quoted to the effect that if the car had been running at its usual and customary rate of speed, if such there was, and it was far enough south of Grauman Avenue
where plaintiff attempted to cross Holmes Street, that
**Excessive** plaintiff could and would have crossed Holmes Street in
**Speed.** safety, etc. It is said there is no evidence set out above finding of that kind. On the contrary, the evidence set out above sufficiently supports it. If the car was about the middle of the block, or two-thirds of the way to Grauman and running at twelve miles an hour, a distance of at least one hundred and thirty feet away, and if the plaintiff was running, as it was said he was, four miles an hour, he could have crossed in perfect safety because he was already in the street at that time, probably not more than thirty feet from where he would have to board the car. The evidence amply supports that.

It is further objected that the jury was authorized to find that the car was running at a highly negligent rate of speed. It was stated that that broadens the issue. On the contrary, the petition alleges just those facts. Instruction Number One was not erroneous.

V. Appellant assigns error to the refusal of Instruction J, offered by it, as follows:

"Although the jury may find from the evidence that the motorman of the car did fail to sound a gong on said car, and did run the car at excessive speed, still, if you find from the evidence that
the plaintiff could by looking, have seen the approach-
**Plaintiff's** ing car in time to have kept off the track and avoided
**Negligence.** a collision, or, if by listening, could have heard the approaching car in time to have avoided a collision, and failed to look and listen, if you so find, or, if he did either, failed to heed what he saw or heard, then the plaintiff cannot recover and your verdict must be for the defendants."

316 Mo.—48.

The instruction is properly refused because it simply provides that if plaintiff was negligent he is not entitled to recover without requiring the jury to find that his negligence contributed to his injury. Contributory negligence, in order to be available as a defense in a case of this kind, must contribute, and that instruction is defective for failing to require a finding of that. Besides the point is amply covered by instructions numbered I, K and M, given at the instance of defendants.

VI. It is claimed there was error in allowing the plaintiff to testify in rebuttal, in further explanation of the situation. All he

**Rebuttal.** testified to when recalled in rebutal was that the car was coming the way all cars come at that time. It added nothing to what he had already said.

Other alleged errors are mentioned but we do not find them of sufficient importance to require further consideration. No point was made that the verdict was excessive.

The judgment is affirmed. *Blair, C. J.,* and *Ragland* and *Atwood, JJ.,* concur; *Walker, J.,* dissents; *Graves, J.,* absent; *Gantt, J.,* not sitting.