OMEGA TAGGART, APPELLANT, v. JOSEPH MASERANG DRUG COMPANY, A CORPORATION, RESPONDENT.*—14 S. W. (2d) 453.

St. Louis Court of Appeals. Opinion filed March 5, 1929.

*Corpus Juris-Cyc References: Appeal and Error, 3CJ. section 756, p. 850, n. 24; section 757, p. 857, n. 52; Motor Vehicles, 42CJ, section 1150, p. 1283, n. 21; Trial, 38Cyc, p. 1666, n. 83; p. 1753, n. 44.

*Goodman & Stephenson* and *Henry S. Cooke* for appellant.

*Jones, Hocker, Sullivan & Angert* for respondent.

NIPPER, J.—This is an action for damages for personal injuries alleged to have been sustained by plaintiff, as a result of being struck by an automobile belonging to defendant, and being operated at the time, by one of its employees. Plaintiff relied upon defendant's negligence in the following particulars:

1. In driving said automobile at a high and dangerous rate of speed.

2. In failing to drive said automobile as near the right-hand side of Delmar avenue as was practicable.

3. In failing to give any warning signal of the approach of said automobile.

4. In failing to keep a watch ahead for pedestrians on the street, and also, the humanitarian doctrine.

The defendant's answer was a general denial, coupled with a plea of contributory negligence. There was a verdict and judgment for the defendant and plaintiff has appealed, relying for reversal

upon the court's action in giving certain instructions on behalf of defendant, to which we will refer later.

The evidence, as offered on the part of the plaintiff, was to the effect that at the time of this accident she was walking along Delmar boulevard in the 6200 block. The accident happened near the intersection of Delmar boulevard and Eastgate avenue, in the city of St. Louis. Delmar runs east and west, and Eastgate runs south and intersects with Delmar boulevard from the north. When plaintiff had reached Eastgate avenue she turned south and attempted to cross Delmar boulevard at the regular crossing place, even with the west curb line of Eastgate avenue. She was crossing Delmar for the purpose of taking an eastbound street car. There are two street car tracks on Delmar. The westbound cars operate on the north tracks, and the eastbound cars on the south tracks. As plaintiff started across Delmar she looked east and saw an automobile about a block away. She said there was no street car ahead of the automobile, and that she saw no other traffic and thought she could get across the street. She had crossed the south track of the eastbound car when she was hit. The street car tracks are located in the center of the street, and she was struck by this automobile as she was stepping across the south rail. In view of the questions raised here, it is unnecessary to refer to her injuries in any manner. She testified that she weighed about one hundred and ninety-eight pounds; that she was facing south when she was struck on the left side; that when she looked east and saw the machine coming she did not see it again, or hear it, until it struck her; that it was the only machine in the street that she saw, going west, and that she did not see a street car going either east or west at that time; that she looked east before crossing the street, and while crossing Delmar she again looked east, and that she was looking all the time she was walking across, until the time she was hit.

One of plaintiff's witnesses testified that he saw the accident; that he was driving an automobile east on Delmar, approaching Eastgate, at the time; that he noticed some cars driving abreast, and it appeared to him that they were very close together; that he noticed a Ford roadster run around a car at Eastgate, and that he saw the plaintiff crossing the street, and that the next thing he knew she was lying in the street. This witness testified that the driver of defendant's automobile refused to give his name, and did not give it until the police arrived; that witness took the license number of defendant's automobile and gave it to plaintiff. The witness further testified that the car which struck plaintiff passed to the left of traffic going west, and struck plaintiff when she was in the eastbound car track. He said he thought there must have been twenty-five or thirty cars going west in the block between Skinker and

Eastgate, and that there were cars parked along the curb on the south side of the street; that he saw this Ford swerve and make a side swipe before it struck plaintiff.

The evidence on the part of the defendant, as we gather it from the driver of the Ford car, was that as the driver approached Eastgate avenue he was driving in the street car tracks, and that there were two automobiles and a street car directly in front of him, going west; that he was driving about five miles an hour, because the street car and two automobiles necessitated his traveling at that rate of speed; that he was traveling along the westbound street car tracks because there were automobiles to the right, or north of him, precluding him from driving any closer to the right side of the street. He testified that he first observed plaintiff when she had reached the north rail of the eastbound tracks on Delmar, and at that time she was to the left, or south of him, and not in the range of his line of travel. She was about twenty-five feet away at that time; when she reached the eastbound tracks, and when he was about twelve feet from her, she suddenly turned to the right with the apparent purpose of retracing her steps back to the north side of Delmar. As soon as he saw this he sounded his horn, and plaintiff paused for a moment and then suddenly started for the north side of the street, directly in front of the car. When he saw plaintiff start toward the north, the two automobiles in front of him were turning to the right, into Eastgate avenue; he then blew his horn, thinking she would turn back south, and when they were about three feet apart she came back and the accident happened; that he was about three feet from her when she made the start the last time; that he immediately applied his brakes, but could not avoid the accident. He denied that there were any police present at any time, and testified that he asked plaintiff if she was hurt and offered to take her to a doctor, but she refused to go to the doctor, and told him it was none of his business as to whether or not she was hurt.

Plaintiff insists that the court erred in giving certain instructions on behalf of defendant, and the objections urged against these instructions, four in number, necessitate our setting them out in full.

No. 2. "The charge laid by plaintiff against the defendant is one of negligence. Negligence is a positive wrong, and therefore in this case is not presumed. In other words, a recovery may be had on a charge of negligence only when such charge is sustained by the preponderance, that is, the greater weight of, the credible evidence to the reasonable satisfaction of the jury that the charge is true as laid, and it does not devolve upon the defendant to disprove the charge, but, rather, the law casts the burden of proof in respect of it upon the plaintiff, and such charge of negligence must be sustained by the preponderance, that is, the greater weight, of the credible evi-

dence to the satisfaction of the jury, as above stated. If therefore, you find the evidence touching the charge of negligence against defendant to be evenly balanced, or the truth as to the charge of negligence against defendant remains in doubt in your minds, after fairly considering the evidence, your verdict must be for the defendant.''

No. 3. ''The court instructs the jury that it was plaintiff's duty to exercise ordinary care for her own safety while crossing the street mentioned in the evidence. In this connection, the court further instructs you that if you find and believe from the evidence in this case that plaintiff either saw, or by the exercise of ordinary care could have seen, the defendant's automobile in time thereafter, by the exercise of ordinary care, to have avoided the same, and that plaintiff failed to do so, and that such failure directly caused, or contributed to cause, plaintiff's injuries, then she cannot recover in this case, and your verdict must be for the defendant.''

No. 4. ''The court instructs the jury that if you find and believe from the evidence in this case that, while plaintiff was crossing Delmar avenue from the north to the south, if you so find, she passed in front of defendant's automobile and was to the south and in the clear of defendant's automobile, and if you further find that plaintiff then suddenly turned around and started back to the north directly in front of the automobile, when the automobile was close to plaintiff, if you so find, and by so doing plaintiff came in contact with the automobile, and if you further find that plaintiff at the time and in so doing failed to exercise ordinary care for her own safety and that such failure on the part of plaintiff, if you so find, directly caused, or contributed to cause, plaintiff's injuries, then she cannot recover in this case, and your verdict must be for defendant.''

No. 5. ''The court instructs the jury that if you find and believe from the evidence in this case that, while crossing Delmar avenue from the north to the south, if you so find, plaintiff passed in front and in clear of defendant's automobile, and thereafter plaintiff suddenly turned around and started back to the north directly in front of the automobile mentioned in the evidence, and that at that time the driver of the automobile, by the exercise of the highest degree of care, was unable to avoid striking plaintiff, then and in that event plaintiff cannot recover in this case, and your verdict must be for defendant.''

Plaintiff submitted her case to the jury without requesting any instructions, except one, on the measure of damages.

The objection urged to instruction No. 2, is that it erroneously defines the burden of proof cast upon plaintiff, and plaintiff relies

upon the case of Brooks v. Roberts, 281 Mo. 551, 220 S. W. 11, as authority for the proposition that this instruction is erroneous. The instruction condemned in Brooks v. Roberts, supra, required certain facts to be proved beyond a reasonable doubt. The instruction in the present case does not go that far, and one almost identical in language, was approved by the Supreme Court in Denkman v. Prudential Fixture Co. (Mo.), 289 S. W. 591. It is insisted, however, that Brooks v. Roberts, supra, was by the Court en Banc, and the Denkman v. Prudential Fixture Co., was a divisional opinion, and that as these opinions are in conflict it is our duty to follow the last controlling decision of the Court en Banc, and disregard the division opinion. We do not think these opinions are in conflict. The court says in the Denkman case that the instruction makes no reference to reasonable doubt, and does not fall within the class of instructions criticized in Brooks v. Roberts. The court further held that the language complained of in this instruction merely stated the converse of the reasonable satisfaction previously charged. There was no error in the giving of this instruction.

It is insisted that instruction No. 3 is erroneous because it ignores plaintiff's right to recover under the humanitarian doctrine, and attempts to apply the principle to plaintiff rather than defendant, and further, that it does not confine the jury to a consideration of the specific acts of negligence pleaded in the answer, and that it also assumes facts. We stated above, that plaintiff asked no instructions except on the measure of damages, therefore, she submitted her case to the jury, upon all the assignments of negligence in the petition, without any instruction upon any of them. Contributory negligence was a defense to all the assignments of negligence, except, the last-chance doctrine. Under these circumstances, the court should not be convicted of error in giving either instruction No. 3 or No. 4. Both instruction No. 3 and No. 4 deal with the question of contributory negligence on the part of plaintiff, and do not deal with the humanitarian doctrine. If the plaintiff wanted the jury correctly informed as to her right to recover under the humanitarian doctrine, she should have asked that an instruction be given upon that phase of the case. [Sisk v. Industrial Track Const. Co., 316 Mo. 1143, 295 S. W. 751; Denkman v. Prudential Fixture Co., supra.] We do not think there is anything to the contention that either instruction No. 3 or No. 4 assumes facts. The jury was requested by these instructions to find the facts necessary to a defense of plaintiff's cause of action. Under the facts of this case, there are no errors in instructions No. 3 and No. 4.

The same objection is made to instruction No. 5, and also the further contention that there is no evidence to support this instruction. There is no merit to this contention. The defendant

testified that when he first saw the plaintiff she was on the eastbound tracks and he was about twenty-five feet away from her; that when he was about twelve feet from her she suddenly turned to the right as if about to retrace her steps to the north curb of said street; that when he saw her apparent intention he sounded his horn for the purpose of giving her warning, When this was done, she stopped momentarily, and then suddenly started for the north side of the street, directly in front of the automobile, and that he immediately applied the brakes.

The case, we think, was fairly submitted so far as defendant's instructions are concerned, and if plaintiff's theory of the case was not correctly presented, then counsel should not be heard to complain, because he asked no instructions attempting to present that theory, other than the instruction on the measure of damages. The judgment is accordingly affirmed. *Becker, J.*, concurs; *Haid, P. J.*, not sitting.