JOSEPH DEMPSEY, Appellant, v. G. M. HORTON and WESTERN UNION TELEGRAPH COMPANY; a Corporation.—84 S. W. (2d) 621.

Division Two, July 11, 1935.

380

*Berthold & Chase* for appellant.

*Green, Henry & Remmers* for respondents.

382

BOHLING, C.—Plaintiff instituted suit against defendants for $25,000 damages arising out of personal injuries to plaintiff occasioned by alleged negligent operation of an automobile by defendant Horton. Verdict and judgment for defendants, and plaintiff appealed.

Plaintiff makes no issue as to the justness of the verdict for defendant Western Union Telegraph Corporation, and "defendant," as used herein, refers to G. M. Horton.

Lester Dempsey, plaintiff's son, was driving plaintiff's automobile on Canter Way drive when the left rear axle broke. The record discloses that Canter Way drive is an east and west highway, approximately thirty-five feet wide with a hard-surfaced pavement of from eighteen to twenty feet wide at the place in question. He parked the car, facing west, on the north side of the highway, with a part of the left side of the car on the pavement and the balance on the dirt shoulder. He informed plaintiff of the occurrence and on the evening of May 26, 1931, while it was still light, plaintiff, his son and George McGuirk went to where plaintiff's automobile was parked in Lester Dempsey's automobile. Lester Dempsey traveling east, drove his automobile in back of plaintiff's automobile and, headed east, parked a distance, estimated from six to fifty feet, east of plaintiff's automobile. Plaintiff then went to his automobile and, according to his testimony, was waiting for his son to bring him a jack to work on the car. According to plaintiff's testimony he had been standing at or against the left back fender of his automobile for about five minutes, looking west, when he was struck by defendant's automobile; and had a short piece of a two by four about two or two and a half feet long laying on the back fender, with his arm resting on it. He also testified that there was no warning given by any approaching automobile before he was struck. Witness McGuirk, plaintiff's only eyewitness, testified he was on the south running board of the son's car, saw defendant's car approaching and waited for it to pass before going to plaintiff's automobile; that he turned his head and saw the rear fender of defendant's car come in contact with plaintiff, who was standing at the back of his automobile. Defendant G. M. Horton had been with some friends at the Midland Valley Country Club, a short distance east of where

plaintiff's automobile was parked, and, leaving the club with Mr. Kelly and Mr. Forita, was proceeding west on Canter Way drive. According to Mr. Horton's testimony (substantiated by defendant's witnesses), he noticed a car parked on his right, and as he was nearing it a car coming from the west cut across in front of his and in back of the parked car and came to a stop. He testified that about that time he first saw plaintiff, who was working around the back wheel of his automobile; that just as he reached the scene of the accident, plaintiff, who had been leaning over, raised up, holding a scantling about five or six feet long, and took a step or two backwards; that, as plaintiff straightened up, he, defendant, swerved his car as much as he could but was unable to miss the scantling, which struck the window frame of the car; and that plaintiff's body did not come in contact with defendant's automobile. Plaintiff was thrown to the pavement and injured.

Plaintiff's case was submitted to the jury under the humanitarian doctrine on the ability of defendant to have warned plaintiff, or to have stopped his automobile, or to have changed and diverted its course.

 Plaintiff alleges error in the giving of Instruction No. 4. This instruction, in every material respect, was a duplicate of the instruction set forth and held reversible error in Aly v. Terminal Railroad Assn., 336 Mo. 340, 78 S. W. (2d) 851, 854(6), and concluded: "If, therefore, you find the evidence touching the charge of negligence against the defendant to be evenly balanced, or the truth as to the charge of negligence against defendant remains in doubt in your minds, after fairly considering the evidence, your verdict must be for the defendants." Speaking of the quoted portion of the instruction, the Aly case states: ". . . we do not see how it can be otherwise interpreted except that it requires a plaintiff to prove the charge of negligence by such a preponderance of the evidence as to remove any doubt in the minds of the jurors. The instruction so says in unmistakable terms. . . . Jurors would no doubt understand by the latter part of the instruction that a plaintiff must prove a charge of negligence by such a preponderance of the evidence as to remove any doubt in their minds as to such charge. We are of the opinion that that would be a correct interpretation of the instruction. Such an instruction casts upon a plaintiff a much greater burden than the law requires." [Werminghaus v. Eberle (Mo.), 81 S. W. (2d) 607.] The cases cited by respondent [Denkman v. Prudential F. Co. (Mo.), 289 S. W. 591, 594(8), and Taggart v. Jos. Maserang Drug Co., 223 Mo. App. 292, 297, 14 S. W. (2d) 453, 455(1)], as stated in the Aly case, "should not be followed on the point in question." It follows the cause must be remanded.

384

■ Plaintiff asserts that the testimony of defendant is not consistent with the laws of physics, is demonstrated to be false by our own common knowledge of science, and, therefore, amounts to no evidence at all; and contends the cause should be remanded. Plaintiff relies on cases wherein defendants made a like attack against plaintiff's evidence in the appellate courts. The record discloses no given instruction on behalf of defendant going to the merits; no such issue raised and saved to the admission of the alleged objectionable testimony, or attempt to withdraw the same from the consideration of the jury. Plaintiff's only contention, in effect, is that there was no sufficient substantial evidence to support the verdict. This issue was ruled in Cluck v. Abe, 328 Mo. 81, 84(1-4), 40 S. W. (2d) 558, 559(1-5), where the court said: "Plaintiff's first contention is that the verdict in defendant's favor is not supported by substantial evidence. The sufficiency of the evidence to support the verdict in defendant's favor is not an open question in this court. . . ." Defendant's answer embraced a general denial. The evidence was oral. The burden of proving defendant's alleged negligence was on plaintiff throughout. The jury was privileged to believe or reject, in whole or in part, the testimony of any witness [Gould v. Chicago, etc., Railroad Co., 315 Mo. 713, 723, 290 S. W. 135, 138(2)], even though uncontradicted and unimpeached [Cluck v. Abe, supra; Young v. Wheelock, 333 Mo. 992, 1000, 64 S. W. (2d) 950, 953(1); Spain v. Burch, 169 Mo. App. 94, 108, 154 S. W. 172, 176(6)]. Conceding plaintiff made a prima facie case, it remained for the jury to pass on the credibility of the witnesses and the weight and value of their testimony. "The fact, if it were a fact, that defendant's testimony was inherently impossible and unbelievable and so contradictory as not to amount to substantial evidence, furnishes no reasons for saying that the jury should have believed the plaintiff's evidence." [Cluck v. Abe, supra, and cases there cited.]

However, as error necessitating a retrial exists, and inherently impossible and unbelievable evidence should not be admitted, we examine the alleged objectionable testimony. Only in those extraordinary cases where deductions from physical laws and facts so clearly and irrefutably disprove the testimony of witnesses that reasonable minds may not entertain any other conclusion are courts justified in ruling sworn testimony inherently unbelievable and impossible. [Lang v. Missouri Pac. Ry. Co., 115 Mo. App. 489, 497, 91 S. W. 1012, 1013; Schupback v. Meshevsky (Mo.), 300 S. W. 465, 467(2); Cluck v. Abe, supra; Maurizi v. Western C. & M. Co., 321 Mo. 378, 395, 11 S. W. (2d) 268, 274(7); Kibble v. Quincy, etc. Railroad Co., 285 Mo. 603, 618, 227 S. W. 42, 46(4); Kiefer v. St. Joseph (Mo.), 243 S. W. 104, 107(1); Vacarro v. Pevely D. Co. (Mo. App.), 22 S. W. (2d) 859(1, 2).]

■ Seizing upon testimony in behalf of defendant that as defendant's automobile, traveling west, approached the scene of the accident an eastbound automobile cut across in front of defendant's car, passing in back of plaintiff's automobile, and stopped, plaintiff asserts, since plaintiff's testimony established that plaintiff was taken to his automobile in his son's automobile which was parked east of plaintiff's automobile, and the son's car was the only car so parked, it would have been a physical impossibility for plaintiff to have alighted from the automobile crossing in front of defendant's automobile and reach the scene of the accident in time to be injured by defendant's automobile. The argument proceeds on a false premise. The jury could believe or reject plaintiff's testimony. The testimony on behalf of defendant did not show that plaintiff was in the automobile which cut across the highway. When defendant first saw plaintiff, defendant estimated he was one hundred feet east of plaintiff and plaintiff at that time was apparently working on his automobile. According to all the testimony plaintiff was on the highway near the rear of his broken-down automobile immediately preceding the accident. How he arrived there is not an essentially material factor on the merits of the case.

Plaintiff asserts the testimony of certain witnesses, who were approximately one hundred twenty-five feet west and fifteen feet north of plaintiff's automobile, that they observed plaintiff working at the left rear end of his automobile to be unbelievable; because, with the automobile between the witnesses and plaintiff, they could not have seen plaintiff. The testimony of these witnesses is not to the effect that plaintiff's automobile was between them and plaintiff. They testified that plaintiff was not back of his automobile but to the south side of it, at its left rear end; and that he stepped south at the time of the accident. The evidence does not develop the angle, if any, of the highway at the place in question; the angle, if any, of plaintiff's automobile on said highway; how far plaintiff was south of his automobile, the height of plaintiff and of the automobile —its hood as well as body; and the effect of the elevation, if any, where the witnesses were standing in comparison with the elevation of the highway.

Plaintiff, asserting defendant testified that while he was one hundred feet east of plaintiff, he saw plaintiff on his knee at the left rear end of plaintiff's automobile, with a scantling about six feet long, and when his automobile, traveling about twenty miles an hour, was within a car's length of plaintiff, plaintiff suddenly arose, stepped back two or three steps, and, stepping south two or three more steps, went to the center of Canter Way drive with the scantling so that the end of the scantling struck the side of defendant's automobile, argues, under such facts, defendant's automobile would have

passed the point of collision before the scantling could have come in contact with it. Plaintiff overlooks the facts that defendant was estimating the speed of his automobile; that he testified he had reduced the speed to ten or fifteen miles an hour at the time of impact; that plaintiff was leaning or stooping over, not necessarily on one knee; and that plaintiff took a step or two backwards, moving out three to six feet, as defendant passed.

Plaintiff's contentions in the above respects should be addressed to the triers of the fact.

■ At the trial plaintiff's testimony bearing on the *res*, in part, was not in accord with that attributed to him in a deposition. On cross-examination, defendant inquired as to when plaintiff ascertained that mistakes existed in his deposition and as to the state of his memory of the facts as of the date of the deposition in comparison with the date of the trial. Plaintiff contends the inquiries, especially the latter, sought to invade the province of the jury, citing cases holding, where a litigant's testimony at the trial contradicts his previous statements given in a deposition or at a former trial, that it is for the jury to determine what credence it will give the evidence before them as impeached by the litigant's previous statements. [Pettitt v. Kansas City (Mo. App.), 267 S. W. 954, 956(2); Guilvezan v. Union of Roumanian, etc., of America (Mo. App.), 287 S. W. 787, 784(4); Sugarwater v. Fleming, 316 Mo. 742, 752(3), 293 S. W. 111, 115(5).] These cases do not rule the extent and scope of the cross-examination. Great latitude should be allowed in the cross-examination of a witness whose testimony contradicts his previous statements on a material issue. [Case v. St. Louis-S. F. Ry. Co. (Mo.), 30 S. W. (2d) 1069, 1072(7); State v. Steele, 226 Mo. 583, 602, 126 S. W. 406, 412(7); St. Louis v. Worthington, 331 Mo. 182, 193(2), 52 S. W. (2d) 1003, 1009(3).] The inquiries in the instant case sought to impeach plaintiff, affect his credibility as a witness and the weight and value of his testimony. They had a direct bearing on plaintiff's memory as to the contradictory statements, and, within the discretion of the trial court, the facts sought appearing to be peculiarly within the witness' knowledge, the cross-examination was proper.

■ Plaintiff assigns error in the refusal of an instruction predicating recovery under primary negligence on the failure of defendant to warn plaintiff of the approach of his automobile. [Plaintiff relies on Riggle v. Wells (Mo. App.), 287 S. W. 803, 805; Peterson v. United Rys., 270 Mo. 67, 75, 192 S. W. 938, 940(3); Woods v. Wells (Mo.), 270 S. W. 332, 334.] The Peterson and Woods cases are to the effect that where one observes the approach of a street car some distance from the scene of an accident, the failure of defendant to previously warn of its approach is eliminated as a proximate cause of

ensuing injuries, as a warning would convey through the sense of hearing no greater notice than that which the eyes through the sense of sight had given. In the Riggle's case, the court, although the approach of the street car had been observed some distance away, concluded the plaintiff and her companion were unaware of the immediate danger and proceeded up until the moment of the collision in the full belief ample time existed to cross the tracks in safety whereas it might well be inferred a warning would have brought a realization of the approaching danger. The foregoing cases do not discuss the effect of contributory negligence on plaintiff's right to recover. In the instant case respondent contends plaintiff was guilty of contributory negligence as a matter of law.

Canter Way drive is an east and west highway. Westbound traffic used the north and eastbound traffic, the south part of the pavement. Plaintiff testified his automobile was parked, headed west, a few feet on the pavement and the balance off to the north of it; that he was standing up against the left rear fender; that he was looking west; that he had been there about five minutes when he was struck; that he did not know where the automobile striking him came from; that the accident occurred about dusk on a clear evening; that, when asked his purpose in facing west, he just walked up there and stood that way, for no particular purpose. His petition pleaded unconsciousness and obliviousness of any danger or peril, and his testimony and instruction under the humanitarian doctrine were in accord therewith.

A failure on the part of a plaintiff, where a duty to look exists, to see what is plainly visible when he looks constitutes contributory negligence as a matter of law [Kelsay v. Missouri Pac. Ry. Co., 129 Mo. 362, 374, 376, 30 S. W. 339, 342, 343, stating: "One of two facts is true: Either the plaintiff did not look with that care common prudence required of her, or she did not look at all, until too late to avoid the collision. . . . In any event we can but say that plaintiff was negligent and that her negligence contributed to her own injury"]. In Woods v. Moore (Mo. App.), 48 S. W. (2d) 202, 207(9), plaintiff, a farmer working as a laborer on the shoulders of United States highway No. 36, was struck by a passing automobile when within about three feet of the north edge of slab and injured while he was in the act of crossing the highway from the south to north to secure a garment. He testified he looked before starting across and saw nothing. The court, in holding plaintiff guilty of contributory negligence as a matter of law, said: "During that time the car was in plain view; if plaintiff looked, as he testified, he must have seen it. . . . Not to see what is plainly visible when there is a duty to look constitutes negligence. If, on the other hand, . . . plaintiff did not look at any time, until just before he was struck, when there was a duty imposed upon him to look, he

was likewise guilty of negligence.'' In Wolfson v. Cohen (Mo.), 55 S. W. (2d) 677, 679(3), a pedestrian, who was proceeding from a curb to a safety zone about twenty-five feet away, after traversing about half the distance, observed approaching auto traffic about seventy-five feet distant and was struck by defendant's automobile when within two or three feet of the safety zone. This court stated the evidence justified a warning only under the humanitarian doctrine. Iman v. Freund Bread Co., 332 Mo. 461, 466(3), 58 S. W. (2d) 477, 480(5), holds a street traveler who sees and knows of a fast moving truck which cannot be swerved or stopped in an instant, ''cannot blindly or heedlessly step into its pathway so close as to endanger his safety without being negligent in so doing as a matter of law;'' and quotes the following from Russell v. Brauer-Berger Gro. Co. (Mo. App.), 288 S. W. 985, 988: ''A pedestrian who goes upon a much-traveled street, over which he knows automobiles are constantly passing, without looking for approaching automobiles in the direction from which automobiles may be expected to approach, subjects himself to danger from approaching automobiles not necessarily arising from the negligence of the drivers, but a danger which is likely to arise though the drivers are in the exercise of the utmost care. If by looking for approaching automobiles, which is but the act of reasonable prudence under such circumstances, he would discover the negligence of an automobile driver which threatens him in time to avoid being injured, he ought not to be permitted to presume, without looking, that the driver would not be negligent.'' [And see Davis v. People's Ry. Co., 159 Mo. 1, 59 S. W. 982; Young v. St. Louis Pub. Serv. Co. (Mo. App.), 57 S. W. (2d) 717; Curtis v. Capitol Stage Lines Co. (Mo. App.), 27 S. W. (2d) 747, 751(5).]

■ Although a difference exists between a railroad or street railroad tracks and a public highway, paved to serve a demand of the present day, the fundamental rules underlying due care remain unchanged. So far as primary negligence is concerned, the obligation to exercise due care remains mutual and reciprocal. One may not disregard the laws of prudence and exact of others a primary obligation to protect him against his lack of caution. If he exercises due care for his own safety, then, absent information to the contrary, he may rely upon the presumption that others will obey the law. [Cash v. Sonken-Calamba Co., 322 Mo. 349, 359, 17 S. W. (2d) 927, 931(10), and cases cited; Clark v. Chicago & A. Ry. Co., 127 Mo. 197, 213, 29 S. W. 1013, 1017; Morgan v. Wabash Ry. Co., 159 Mo. 262, 273, 60 S. W. 195, 197.] In the instant case plaintiff voluntarily stood on a paved public highway, where he had reason to anticipate automobile traffic, for several minutes without taking the precaution to look for the approach of that traffic from which danger was to be expected. This, without any particular purpose for so doing. Plaintiff's witness McGuirk observed the approach of defendant's au-

tomobile and permitted it to pass. Any duty to look on the part of one on such a highway must embrace observation in the direction from which danger is to be anticipated. Since plaintiff's negligence is established by plaintiff's own testimony, he is precluded from recovery on grounds of primary negligence.

The judgment is reversed and the cause is remanded for retrial as to defendant G. M. Horton only; and with directions to hold in abeyance the verdict of the jury in favor of defendant Western Union Telegraph Corporation until the cause is disposed of as to defendant G. M. Horton, and, after retrial as to defendant G. M. Horton to enter judgment in favor of defendant Western Union Telegraph Corporation and in accordance with the verdict on retrial as to defendant G. M. Horton. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.