Otto LUCAS, Respondent,

v.

Glenn BARR, Appellant.

No. 22519.

Kansas City Court of Appeals, Missouri.

Jan. 7, 1957.

Russell N. Pickett, Eugene E. Andereck, Phil Hauck, Pickett, Andereck & Hauck, Trenton, Jayne & Jayne, Kirksville, for appellant.

L. F. Cottey, Lancaster, Charles E. Murrell, Edina, Roland A. Zeigel, Kirksville, for respondent.

MAUGHMER, Special Judge.

The respondent, as plaintiff below, had judgment against defendant-appellant in the sum of $3,500 for personal injuries received when struck by defendant's automobile. The case was submitted on the issue of primary negligence alone. The sole question on appeal is whether or not plaintiff was guilty of contributory negligence as a matter of law. If he was, then the case should not have been submitted to the jury. If he was not, then the judgment should be affirmed.

In 1954, approximately one and one-quarter miles east of Green Castle, Sullivan County, Missouri, there was an abandoned railroad bed and fill. A group of citizens in the area who enjoyed fishing removed the drainage pipes, thereby making a dam out of the old railroad fill. As a result, three fishing lakes were formed. This group of sportsmen utilized a bulldozer to

widen and re-enforce the embankment. The top was then leveled off to form an east-west roadway, which provided access to the area for automobiles. This roadway was built and maintained by the fishing club members. No government funds were expended on it. The road led to the fishing lakes, but not to any other place. However, it was used as a road by persons coming to the lakes.

On the afternoon of Sunday, August 29, 1954, plaintiff, as a passenger in the automobile of a Mr. Morton, went to these lakes to fish. About six p. m. Mrs. Lucas, plaintiff's wife, drove plaintiff's pick-up truck down the roadway and in an easterly direction. She planned to meet her husband and take him elsewhere. Apparently Mrs. Lucas drove too close to the south side. In any event, the right front wheel of the pick-up dropped off of the embankment. The oil pan came to rest on the ground and the truck was stuck.

Plaintiff and defendant, with others, learning of the misadventure, suspended their fishing operations, came to where the pick-up was stalled and discussed ways and means of getting it back on the roadway. It was the consensus of opinion that an ordinary passenger car could not do the job, but that a heavy truck or tow-truck was needed. The defendant offered to and did drive his car to Green Castle, where he arranged for Mr. Kiger to take his truck to the scene and pull the pick-up back on the road. In the meantime, plaintiff, who was not feeling well, sat down on the left or north running board of his pick-up, to await the arrival of help. It was while here seated that he was injured. Since the right front of the pick-up had slipped off of the roadway and was lower than the left side, the running board upon which plaintiff was seated was not level. Therefore, plaintiff's legs, as he was there seated, did not form the usual right angle, but rather the letter "V" with the knees being higher and farther out than were the other parts of his legs. While plaintiff was so seated, the defendant, in his automobile, passed by

without incident, on his way to Green Castle. An unidentified car also passed. After the accident, the Kiger truck passed going east and had plenty of room. There was testimony that on this particular Sunday, numerous cars were traveling the roadway,—proceeding both east and west and passing each other without difficulty. The width of the roadway at the scene of the accident where the truck was stalled, was estimated by witnesses to be 18 to 20 feet.

Plaintiff testified that he saw defendant returning from Green Castle when he was 100 to 150 feet to the west of where plaintiff was sitting and that defendant was driving slow. He said that defendant's car came up opposite plaintiff, that the front half or two-thirds went by him safely, while defendant's son, who was in the right front seat, was telling him that someone with a truck was coming from Green Castle. Plaintiff said that he was under the impression that defendant's car had come to a stop and then began to move forward. Plaintiff testified that he then looked down, saw the running board was under his legs, that he was afraid his legs would be cut off, that he was scared, knew there was no way to get out, and he turned to the left. He said his knee caught defendant's right rear fender and it pushed his hip into the cab of the truck, thereby injuring him.

Instruction P-1 submitted the issue of defendant's negligence to the jury, told the jury that plaintiff was required to exercise "ordinary care," and that defendant, as a motor vehicle operator, was required to exercise the "highest degree" of care. Under this instruction, the jury found that plaintiff was in the exercise of ordinary care for his own safety while seated on the truck running board, and that defendant was not in the exercise of the highest degree of care when he struck plaintiff, there having been room to pass safely on the north side.

■ In considering on appeal defendant's contention that plaintiff be held guilty of contributory negligence, we must re-

member that we consider and view the evidence in a light most favorable to plaintiff and give to him the benefit of all reasonable inferences. Irle v. Irle, Mo.App., 284 S.W. 2d 44, loc. cit. 46; Caffey v. St. Louis-San Francisco Railway Company, Mo.App., 292 S.W.2d 611, loc. cit. 615.

■ Negligence is ordinarily a question for the jury. It cannot be ruled to exist as a matter of law under a state of facts where ordinary minds might reasonably draw different conclusions. A court so declaring, would be invading the fact determining province of the jury. Gillaspie v. Louisville & M. Railroad Company, Mo. App., 260 S.W. 547; Hathaway v. Evans, Mo.App., 235 S.W.2d 407, loc. cit. 412; Caffey v. St. Louis-San Francisco Railway Company, Mo.App., 292 S.W.2d 611, loc. cit. 616.

Defendant invites our attention to Dempsey v. Horton, 337 Mo. 379, 84 S.W.2d 621, and the cases cited in that opinion by the Supreme Court, contending that the facts and law declarations therein, require a reversal of our case. We should not and do not disagree with or modify the law declarations there found, but do the facts in those cases fit or apply to our case? In the Dempsey case, the plaintiff was standing in the road by the side of his parked automobile and did not see defendant's approaching automobile. Submission under the Humanitarian Doctrine only was approved. In the opinion, the Supreme Court, 84 S.W. 2d at pages 625–626, said:

"A failure on the part of the plaintiff, where a duty to look exists, to see what is plainly visible when he looks, constitutes contributory negligence as a matter of law. Kelsay v. Missouri Pacific Railway Company, 129 Mo. 362, 374, 376, 30 S.W. 339, 342, 343, stating: 'One of two facts is true: Either that plaintiff did not look with that care common prudence required of her, or she did not look at all until too late to avoid the collision.' * * * In any event, we can but say that plaintiff was negligent, and that her negligence contributed to her own injury.'"

Likewise in Branscum v. Glaser, 234 S.W. 2d 626, loc. cit. 627, the Supreme Court said:

"'Where one is charged with the duty to look and to look is to see, he must be held to have seen what looking would have revealed.' Smith v. Kansas City Public Service Company, 328 Mo. 979, 43 S.W.2d 548, 553; Weis v. Melvin, Mo., 219 S.W.2d 310, 311. The law is further well settled that "a failure on the part of a plaintiff, where a duty to look exists, to see what is plainly visible when he looks, constitutes contributory negligence as a matter of law."' State ex rel. Kansas City Southern Railroad Company v. Shain, 340 Mo. 1195, 105 S.W.2d 915, 918; Dempsey v. Horton, 337 Mo. 379, 84 S.W.2d 621, 625, 626."

In this case, plaintiff drove through a stop sign onto a main highway where he could see 150 feet down the highway and was struck almost instantly.

We have examined the facts in Woods v. Moore, Mo.App., 48 S.W.2d 202; Wolfson v. Cohen, Mo., 55 S.W.2d 677; Iman v. Walter Freund Bread Company, 332 Mo. 461, 58 S.W.2d 477 and Roux v. Pettus, Mo.App., 293 S.W.2d 144. In each of these cases, contributory negligence as a matter of law was found, but none of those facts fit our facts.

■ In our particular case, the element of failure to look is not present. Plaintiff saw defendant's truck 150 feet away. Can it be said that plaintiff then and there was in a place of peril and should have removed himself, when there was some 12 feet of clear roadway in which defendant could pass and in which space two other cars—one of which was defendant's own car and in which he was then riding—had safely negotiated the passage. In his argument that plaintiff could never make a case under the Humanitarian Doc-

trine, defendant says that plaintiff was never in a position of peril until just before the collision. We agree with this statement, but then it follows that plaintiff not being in an apparently dangerous position, was not contributorily negligent in failing to move elsewhere. Defendant presents two other arguments on the facts. First, he says plaintiff should have been looking when the front part of the truck passed and should then have made outcry to defendant to stop; and second, that since the front of the truck passed plaintiff safely, the back part likewise would have done so, if plaintiff had not moved and changed his position. We cannot hold that plaintiff was guilty of contributory negligence in failing to cry out as the front of the truck went by and we cannot assume that by his so doing, the accident would have been averted. As to the second point, one required to act suddenly and in the face of imminent danger need not act as if he had time for deliberation and exercise of judgment. Johnston v. Owings, Mo.App., 254 S.W.2d 993; and Carter v. Wells, Mo.App., 40 S.W. 2d 725, 726. Under plaintiff's testimony, when he first knew or believed he was in danger, the running board was passing underneath his knees. If he was to act at all, he was required to act quickly. He had no time for deliberation. Under these circumstances, it would be a harsh doctrine to require plaintiff to exercise calm, deliberate and exact judgment, else hold him guilty of contributory negligence as a matter of law. Neither reason nor the cases so require.

Giving to plaintiff, as we must, the benefit of every reasonable inference that may be drawn from the evidence in his favor and according proper scope to the jury verdict, by which determination of the fact is made, precludes us, we think, from holding that he was contributorily negligent as a matter of law.

The judgment is affirmed.

BROADDUS and CAVE, JJ., concur.