GEORGE SULLIVAN, RESPONDENT, v. KANSAS CITY PUBLIC SERVICE COM-
PANY, A CORPORATION, APPELLANT.—231 S. W. 2d 822.

· Kansas City Court of Appeals.   Opinion delivered June 5, 1950.

*Charles L. Carr, Alvin C. Trippe, Hale Houts, Hogsett, Trippe, Depping, Houts & James,* for appellant.

58

*Trusty, Pugh & Green, Guy W. Green, Arvid Owsley* and *James L. Williams* for respondent.

SPERRY, C.—Plaintiff sued for damages growing out of personal injuries received when one of defendant's busses moved backward, pinning plaintiff's legs between the rear bumper of that bus and the front bumper of a bus parked about four feet behind it. The case was tried to a jury and plaintiff had a judgment in the sum of $7458, from which defendant appealed.

The accident occurred at the northwest corner of the intersection of 8th and Grand, in Kansas City. Directly east, across Grand Avenue, is a Katz store, in front of which defendant's street cars, from the south and east part of the city, take on and discharge passengers. This corner is a transfer point for passengers from street cars to busses or *vice versa.*

People who are employed in the industrial and business districts in the north and west part of the city, leave the street cars and walk across the street to get on the busses. The accident occurred at about 7 a.m., April 2, 1946. The evidence was to the effect that the street car and bus traffic, including transfers, was extremely heavy at this corner, at that time of the day. Frequently there are two or more busses parked, one behind the other. Plaintiff stated that he had seen as many as four busses parked, one behind the other. Both of defendant's drivers, as well as others, testified regarding the heavy traffic. Plaintiff stated that, on the morning in question, he arrived in front of the Katz store at about 7 a.m., on one of defendant's street cars. He took a transfer and walked across the street, to the northwest corner, to board a bus. He followed the regular "walkway" for pedestrians. One bus was parked, with the front end near the corner, and another about four feet behind it. Both were taking on passengers and, when he arrived at a point even with the front end of the south bus, the driver closed the door and prepared to move out. Plaintiff, instead of continuing westward along the "walkway", across the front of the bus, turned and walked northward along its east side. When he reached the rear of the bus he turned westward, intending to pass between the

two busses. He stated that, when he entered this opening, the bus was not yet in motion; that after he entered the passageway the south bus started forward, then came back to the north, catching and pinning his legs as aforesaid; that it then started and moved forward again, releasing him, and stopped; that the bus driver got out of the bus, came back to plaintiff, who was on the sidewalk, and told him that the brakes did not hold. Plaintiff also testified to the effect that many people passed behind and between busses parked at this point; that three people preceded him through this passage on this occasion.

Mr. Scott, testifying for plaintiff, stated that he had operated a garage near this intersection and observed people leaving the busses on the west side of the street and the street cars on the east side; that large numbers, when traffic was heavy, crossed the street in both directions, at all angles; that they habitually passed in front of, behind and between the busses, any way and every way. Defendant objected to this testimony as irrelevant and on the grounds that no such custom was pleaded. The objection was overruled. It was admissible as bearing on the question of defendant's negligence, and of plaintiff's contributory negligence. Shamp v. Lambert, 142 Mo. App. 567; 121 S.W. 770, 772. The evidence was relevant. Jones Commentaries on Evidence, Section 587; and admissible, McPherson v. Premier Service Company, 38 S.W. 2d, 277, 278; White v. Hasburgh, 124, S.W. 2d, 560, 564.

The driver of the offending bus testified to the effect that he knew that the traffic was heavy at this corner; that he knew that large numbers of pedestrians crossed the street, in transferring from defendant's street cars to its busses, but that he paid no attention to them or where or how they walked; that he knew that, frequently, two busses were parked, one behind the other, as they were parked on this occasion; that he had a very heavy load, thirty people in the seats and with from twenty to thirty passengers standing; that because of the passengers standing he was unable to see through the rear view mirror, and could not see either plaintiff or the second bus; but he admitted that he stated in his deposition that he did see the rear bus, through the mirror, after someone yelled about the accident.

He stated that, after the bus was loaded, he took his foot off the brake and placed it on the gas pedal; that when the motor accelerated and the gears engaged (the gears were disengaged while the motor was idling) he fully released the hand brake, shoving it forward the full distance permitted, about two feet; that the bus moved forward about a foot; that the motor died and it rolled back to the north; that he immediately stopped it with the foot and hand brake, started the motor, and pulled forward; that he did not know of plaintiff's predicament until, after the bus had rolled backward, he heard

a shout; that after learning of the accident he stopped the bus, went to plaintiff, and gave him his name and number; that he did not tell plaintiff that the brake failed. He stated that the bus rolled backward, when the motor died, because of the heavy load and the grade; that the motors on such busses would die on occasion, but not frequently, when heavily loaded or on a grade; that he could have kept the bus from rolling backward had he not completely released the hand brake, but kept it in contact as he started and pulled forward; that he knew that a bus would roll backward when heavily loaded, on a grade, if the motor should die.

Mr. Miller, defendant's driver on the second bus, stated that he did not see plaintiff until after the bus had pinned him between the bumpers; that he had parked his bus about four feet behind the front bus; that pedestrian traffic was heavy at this corner; that busses were frequently parked there, one behind the other; and that he had seen pedestrians pass between parked busses, but that he did not see any pass between the busses on the morning of the accident.

Plaintiff pleaded, as grounds for recovery, that the bus "was negligently caused, allowed, or permitted to back up." Defendant denied any negligence on its part and pleaded that plaintiff was guilty of contributory negligence.

Defendant's first point is that its motion for directed verdict should have been given because it owed plaintiff no duty and was not negligent as to him. Defendant's agent was charged with knowledge that this intersection was a busy one; that busses habitually parked, one behind the other; that people passed in front of, behind, and between busses during the busy hours, in boarding and leaving them. He was required to exercise the highest degree of care in the operation of a motor vehicle on the streets and highways, so as not to endanger any person. Pitcher v. Schoch, 139 S.W. 2d, 463, 466. Plaintiff had the same right to use the street as did defendant's bus, and to be where he was when struck. Meenach v. Crawford, 187 S.W. 879, 882; Pitcher v. Schoch, supra. Defendant's driver admitted, on cross examination, that he could have prevented the bus from rolling backward had he controlled its movement in this respect by retaining contact with the hand brake. The jury could have found that to be a fact; and it could have found negligence in his failure to so act. The fact that the driver did not, in fact, see plaintiff entering between the busses, or could not have seen him after he entered, constitutes no defense. He is charged with knowledge that pedestrians, or automobiles, might be in the backward path of the bus at any time, and that persons might thereby be injured.

Defendant also contends that a verdict for it should have been directed because plaintiff was guilty of contributory negligence as a matter of law in having entered between the busses while standing, as they were, on a rather steep incline. Defendant concedes that a

pedestrian is not negligent, as a matter of law, merely because he attempts to cross a street at a place where there is no intersection. However, plaintiff's act in this respect certainly gives reason for consideration of the question of contributory negligence by the jury. Pitcher v. Schoch, supra, 466. However, it is urged that the question should have been decided by the court, as one of law, rather than by the jury, as one of fact. Reasonable minds might well differ as to whether or not plaintiff conducted himself as a reasonable prudent person would have done under the same or similar circumstances. Others passed behind and between busses at this intersection. The south bus was preparing to move forward when plaintiff reached a point in front of it, or near its front. Whether it would have been better judgment on plaintiff's part to have gone in front of a bus that was prepared to go forward, or to stand in the street until it moved across his front and cleared the pedestrian walkway, or to walk northward beside the bus and go behind it, is a question for the jury; and in passing behind the bus he was not bound to anticipate that the bus would be negligently backed against him. Ostermeirer v. Implement Company, 255 Mo. 128, 136.

Defendant complains of the admission of evidence to the effect that no warning was sounded when, or before, the bus began its backward movement. One of the issues joined by the pleadings was that of plaintiff's contributory negligence. The evidence was admissible on that issue. Evidence of the sounding of a warning, or of a failure to do so, under plaintiff's charge of ''causing'' the bus to move backward, was also material, and admissible. ''Whatever testimony was offered, which would assist in knowing which party spoke the truth of the issue, was relevant; and when to admit it did not override other formal rules of evidence it ought to have been taken.'' Jones Commentaries on Evidence, supra; Ismert-Hincke Mliling Company v. Mercurio Brothers, 243 S.W. 408, 410.

Error is charged because of the admission, over objection, of certain hospital records. Plaintiff was confined in Research Hospital in April and May, 1946. At that time Section 9777 Mo. R.S.A. (Mo. R.S. 1939), was then in full force and effect, (although since repealed) and required records of patients to be kept. Such records were admissible in evidence because the statute required them to be made and kept. Allen v. American Life & Accident Insurance Company, 119 S.W. 2d, 450, 453. Under the general rules of evidence such records are admissible if properly identified. Kirkpatrick v. Wells, 319 Mo. 1040, 1045. Their admissibility in evidence does not depend on a statute so providing but upon the fact that they are kept pursuant to a statute requiring them to be kept. Priddy v. Baine, 201 Mo. 309, 334, 335. The trial court ruled properly on this point.

It is contended that error was committed in the admission of testimony to the effect that defendant's operator told plaintiff that the brakes did not hold. Plaintiff testified to the effect that the operator made such statement to him when he came to where plaintiff was leaning against a trash can, immediately after the operator had stopped the bus following the accident. Defendant's operator stated that he stopped the bus immediately after he heard a shout which led him to believe that some one was injured; that he immediately got out of the bus and went to plaintiff; that he gave him his name and number, but denied making the above statement. If the statement was made, as plaintiff stated, (and it was for the jury to determine that matter) the testimony was admissible as a part of the *res gestae*. Billingsley v. Kansas City Public Service Company, 191 S.W. 2d, 331, 334; Brinkley v. United Biscuits Company of America, 349 Mo. 1227, 164 S.W. 2d, 325, 330; Smith v. Producers Cold Storage Company, 128 S.W. 2d, 299, 306.

Defendant urges error in the overruling of its motion for a new trial based on the fact that a juror, who had not been selected for service, was permitted to serve on the jury that tried the case.

The juror whose name was actually drawn for service was a white man, named George W. Baker, who lived at 212 Westport Road. Said juror had moved from that address and the sheriff's office returned the summons to the jury commissioner, who mailed it to George W. Baker, a colored man, who lived at 1620 West 9th Street. This man appeared and served on the jury.

A unanimous verdict was returned and, thereafter, defendant learned of the above occurrence. It moved for a new trial and urged this as one of the grounds for its motion. A hearing was had on this feature of the motion and the matter was gone into fully. Witnesses were produced by both parties and, after being fully advised, the trial judge found: "* * * that juror George W. Baker was not guilty of any wilful and fraudulent misconduct and did not use dishonest means for the purpose of getting on the jury and the defendant was not prejudiced by reason of the services of said juror."

It has been declared that the general rule as to statutes regulating the method and manner of selecting jurors, is that such statutes are directory and not mandatory and that, unless it is inferable, from the circumstances of a particular case, that the losing party has been injured by a failure to strictly follow the provisions of the statute a new trial will not be granted after verdict, merely because some irregularity occurred in the selection and impaneling of the jury. State v. Breen, 59 Mo. 413, 417; State v. Knight, 312 Mo. 400, 278 S.W. 1036, 1038; State v. Pine, 57 S.W. 2d, 1087, 1089.

In Lee v. Baltimore Hotel Company, 345 Mo. 458, 136 S.W. 2d, 695, a man intentionally substituted himself on the panel in the place of a regularly selected and summoned juror who bore an entirely

different name. He was qualified as a juror by the jury commission of Jackson County and his name was in, but was not drawn from, the jury wheel. He was not summoned as a juror. The trial court granted a new trial, of his own motion. It was held that the court did not act arbitrarily because the conduct of the juror constituted a fraud and imposition on the court and the parties, as a matter of law. The court laid great stress on the right of litigants to a trial by an impartial jury, and said that a man who uses dishonest means to get on a jury does not do so for the purpose of honestly deciding a case; and it sustained the action of the trial court in granting a new trial.

In Piehler v. Kansas City Public Service Company, 211 S.W. 2d, 459, 464, a juror intentionally concealed the fact that he had previously had a claim against defendant. It was held that since there was a dispute as to liability defendant was entitled to a jury consisting, exclusively, of qualified impartial men, and reversed and remanded the case because of the refusal of the trial court to grant a new trial.

In the case at bar, the trial court heard evidence regarding the circumstances here involved, and found that no one was guilty of any intentional wrongdoing in connection therewith. Therefore, the main point upon which the foregoing decisions rest does not here appear.

However, in Doran v. Boss, 221 S.W. 2d, 756, 758, we held that Section 757, Laws Missouri, 1947, page 346 was mandatory; that its provisions had clearly been violated; and that the trial court had acted properly in awarding a new trial on that ground. Sections 749 to 765, inclusive, Laws Missouri, 1947, pages 342, 350, prescribe a complete code for the selection of jurors in Jackson County. Section 760 thereof provides that no person not drawn or selected according to the provisions of that code shall be permitted to serve as a juror.

In view of the positive language of the statute we are constrained to hold that Mr. Baker was not a qualified juror and was, therefore, an interloper. Defendant was entitled to a decision "* * * based on the honest deliberations of twelve qualified men." Lee v. Baltimore Hotel Company, supra, 698; Piehler v. Kansas City Public Service Company, supra, 463. Failure to grant defendant's motion for a new trial on this ground was reversibly erroneous.

In view of this disposition of the case, it is not necessary to pass on the correctness of the instructions.

The judgment should be reversed and the cause remanded. *Bour, C.*, concurs.

PER CURIAM:—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is reversed and the cause remanded. *Dew, P. J., Broaddus, J.*, concur; *Cave, J.*, not participating.