GEORGE SULLIVAN, Respondent, v. KANSAS CITY PUBLIC SERVICE COMPANY, a Corporation, Appellant, No. 42209—248 S. W. (2d) 605.

Court en Banc, April 14, 1952.

Rehearing Denied, May 12, 1952.

*Charles L. Carr, Alvin C. Trippe, Hale Houts* and *Hogsett, Trippe, Depping, Houts & James* for appellant.

*Trusty, Pugh & Green, Guy W. Green, Arvid Owsley* and *James L. Williams* for respondent.

70

LEEDY, J.—This case reached this court, after opinion by the Kansas City Court of Appeals, under the transfer provisions of Const. of Mo. 1945 (Art. V, § 10) and rule 2.06 of this court. The parties will be designated as in the trial court. Plaintiff recovered judgment for personal injuries for a sum within the monetary jurisdiction of the Court of Appeals ($7456). On defendant's appeal, that court held one of the jurors to have been ineligible or incompetent to serve because not drawn or selected in conformity with governing statutes, and for such reason ordered reversal of the judgment and remanded the cause for new trial. On plaintiff's application to this court, the cause was ordered transferred here for final determination. The opinion is reported as Sullivan v. Kansas City Public Service Co., 231 S. W. 2d 822, to which reference is made for a more complete statement of the facts.

The casualty occurred about 7:00 A. M., April 2, 1946, at the northwest corner of 8th Street and Grand Avenue, in Kansas City, which is a transfer point on and between defendant's streetcar and bus lines. Grand Avenue runs north and south; 8th Street, east and west. Plaintiff, a passenger, was injured while transferring from a streetcar to a southbound bus. Walking west across Grand Avenue in the pedestrian lane or walkway on the north side of 8th Street, he had reached a point near the bus loading zone at the west curb of Grand Avenue, where there were two standing southbound busses, one parked about 4 feet behind the other. When plaintiff reached a point about even with the front end of the front bus, he noticed the driver "was closing the door, ready to leave." He then walked north in the street along the east side of the bus until he reached the space between the two busses, then turned west and walked between them. He was following three other persons through this space, and had gotten about two-thirds of the way through the opening, facing west, when he noticed something pressing against his left thigh. After he entered the passageway, the first bus started forward, then came back to the north, catching and pinning his legs between the rear bumper of that bus and the front bumper of the one behind it.

The point in relation to the juror grows out of the fact that another person of the same name as one of the regularly selected jurors was erroneously summoned and served in the latter's place, under circumstances as follows: George W. Baker, 212 Westport Road, whose name had been regularly drawn from the jury wheels was a white man who had lived at the above address until sometime prior to the time in question, when he moved to Arkansas. The George W. Baker who served on the jury was a colored man who resided at 1620 West 9th Street. It appears that after the name of George W. Baker

of 212 Westport Road had been drawn from the large jury wheel, the sheriff reported that he was unable to serve the summons because Baker had moved. The jury commissioner then looked in the telephone directory for "George W. Baker," found such a name with the address 1620 West 9th Street, called by telephone and asked if George W. Baker lived there and was advised in the affirmative. The commissioner then changed the address on the summons (which the sheriff had returned) by striking out "212 Westport Road" and writing in "1620 West 9th Street," and caused the summons, as changed, to be mailed to 1620 West 9th Street. The Negro, George W. Baker, testified that he had received the summons in the mail and in obedience thereto presented himself for jury service. After an extensive hearing on defendant's motion for new trial, at which the facts pertaining to the matter were fully developed, the court found that [607] "juror George W. Baker was not guilty of any willful and fraudulent misconduct, and did not use dishonest means for the purpose of getting on the jury, and that defendant was not prejudiced by reason of the service of the juror."

In substance, the opinion of the Court of Appeals on the point is this: It recognizes the rule that statutes regulating the method and manner of selecting jurors are generally regarded as directory and not mandatory (and the effect thereof as regards granting of new trials), then distinguishes the case at bar from the main point on which the decision rested in Lee v. Baltimore Hotel Co., 345 Mo. 458, 136 S. W. 2d 695, 127 A. L. R. 711, and Piehler v. Kansas City Public Service Co., 357 Mo. 866, 211 S. W. 2d 459, to both of which matters we agree. It then summarizes the holding of the same court in Doran v. Ross, (Mo. App.) 221 S. W. 2d 756; declares that §§ 749-765, Laws of Missouri, 1947, pages 342-350 (now, as amended in respects not here relevant, RSMo 1949, §§ 497.010-497.290, VAMS), prescribe a complete code for the selection of jurors in Jackson County; makes reference to the provision of the seventh clause of paragraph one of what is now § 497.200, supra, and concludes thus: "In view of the positive language of the statute we are constrained to hold that Mr. Baker was not a qualified juror and was, therefore, an interloper. Defendant was entitled to a decision '* * * based on the honest deliberations of twelve qualified men.' [Citing the Lee and Piehler cases, supra.] Failure to grant defendant's motion for a new trial on this ground was reversibly erroneous."

The cases involving similar statutory provisions have usually gone off on procedural points, such as failure to comply with RSMo 1949, § 494.050, VAMS or for failure of the motion for new trial to allege want of prior knowledge of the supposed disqualification. State v. Wilson, 230 Mo. 647, 132 S. W. 238 (overruled on another point); Allen v. C. R. I. & P. Ry. Co., 327 Mo. 526, 37 S. W. 2d 607. Such practice matters were sought to be injected into this case for the

first time on motion for rehearing in the Court of Appeals. We have concluded to brush them aside, and to consider the ultimate question of the supposed disqualification in its broadest aspect, it being determinable as one of statutory construction.

Defendant relies heavily upon State v. Rouner, 333 Mo. 1236, 64 S. W. 2d 916, which involved the selection of an ·entire panel. There selection by the judges of the county court in private session in a secret closed room, and in the absence of the clerk, was held to constitute such a violation of the statutory safeguards thrown about the process of selecting jurors as to render the error prejudicial and reversible.

In the more recent case of State v. McGoldrick, (Mo.) 236 S. W. 2d 306, also involving an entire panel, the procedure was held not to be a substantial compliance with the statutes. In reaching that conclusion the court pointed out some of the reasons underlying legislation prescribing the manner of drawing juries and cites authorities to this effect: "* * * the object being as far as possible to procure a fair and impartial jury and to obviate the possibility of packing juries or selecting them with reference to particular cases, and also to equalize the burden of serving on juries among all persons qualified therefor." State v. Emrich, (Mo.) 237 S. W. 2d 169, involved the same question and was decided accordingly.

State v. Thursby, (Mo.) 245 S. W. 2d 859, and Doran v. Ross, supra, are so readily distinguishable on their facts as to require no discussion. In both instances the objection went not to a single juror, but to the integrity of the entire panel, because a large number of the general panel (from which the trial panel was ultimately selected) had been excused by a deputy sheriff in violation of the statute which makes it the personal and official duty of the judge alone to hear and determine the validity of excuses presented by veniremen for dismissal from jury service. We find nothing in any of these cases to indicate that a mere mistake or informality in connection with the selection of a juror or jurors will have the effect of vitiating [608] the trial, where, as here, the trial court has heard the proofs pro and con on the subject, and is convinced that no prejudice resulted.

We deem the Court of Appeals' interpretation to be erroneous, because too literal and narrow, and as being out of harmony with the spirit and intent of the statute. The first paragraph of § 760 (now § 497.200) provides that persons of certain enumerated classes (such as those under 21 years of age, of bad reputation or without visible means of support, convicted of felony, etc.) shall not be permitted to serve as jurors. The seventh clause of that paragraph makes the prohibition applicable to "any person not drawn or selected according to the provisions of this article." Is not the effect of the opinion to make these provisions mandatory, and a violation of them, however innocent or casual, ground for setting aside an otherwise regular and

fair trial? That such a drastic result was not intended seems manifest from the provisions of the second paragraph of the same section (which paragraph now appears as a separate section, i. e., RSMo 1949, § 497.210, V,AMS), as follows: "Any party may challenge any juror for any reason mentioned in paragraph (1) of this section, and also for any causes authorized by the laws of this state." If this be not true, why would the legislature reduce to a mere ground or reason for challenge that which it had just established as an absolute disqualification? The former statute (Art. 4, Chap. 5, R. S. '39) which was repealed by the 1947 act, supra, contained a section (§ 765) which declared the "article, and each and all of the foregoing sections thereof" to be mandatory and not merely directory. This provision was deleted in reenacting that section in the 1947 act.

§ 754 of the 1947 act (since repealed and a new section enacted in lieu thereof, Laws 1951, p. ————, S. B. No. 13) required the board of jury supervisors (the circuit judges) to "cause the jury commissioner to make a list of jurors * * * deemed eligible and qualified, * * * either by consulting the * * * telephone directory * * * and * * * to ascertain all facts touching upon the eligibility of jurors by inquiry of the person," etc. It further provides that during "the period while such lists are in use said jury commissioner shall, from time to time, examine and correct the entries, * * * noting changes of residence or business of said parties," etc. The action of the jury commissioner in apparently undertaking to apply the foregoing provisions to the situation confronting him, while irregular and not in conformity with the statute, was not such a departure from prescribed standards as to warrant the granting of a new trial under the circumstances and in view of the trial court's finding on the matter, as hereinabove set out.

Defendant's other assignments (except that challenging plaintiff's instruction No. 1, which was not reached) were severally determined adversely to it. Having reached a different conclusion from that of the Court of Appeals respecting the juror question, it becomes necessary to a proper disposition of the case to rule the instruction question, pertinent to which are the allegations of the pleadings respecting negligence as an issue. Plaintiff's petition alleged that on the day in question "he was passing between two southbound busses which were stopped in the bus zone for such vehicles at Eighth and Grand Avenue, Kansas City, Missouri, when one of said busses was negligently caused, allowed or permitted to back up, pinning him between the rear end of said bus and the front end of the bus behind it," causing him to be injured, etc. The answer admitted defendant's corporate existence, and that it owned and operated the bus complained of, denied all other allegations of the petition, and contained a plea of contributory negligence.

Plaintiff's instruction No. 1 reads as follows:

"You are instructed that where the plaintiff was walking between the busses was a part of the public street and that members of the public had an equal right with the defendant to use such part of the public street when it was not being used by one of defendant's busses in carrying on defendant's [609] regular business; and if you find from the evidence that on the occasion in question and for months prior thereto the defendant followed the custom and practice of having one of its busses stop behind and near another bus and at the place in question, and find that it was the practice and custom for busses to so stop at said place and that they had been so doing for many months prior to the time plaintiff claims to have been injured between the busses; and

"If you further find from the evidence that during said past months some of the persons leaving such busses at such place and some of the persons intending to get on such busses would and did pass between such busses while so stopped; and

"Further find from the evidence that defendant's bus operators and the defendant knew of the foregoing, if you so find, then you are instructed that it was the duty of the defendant and the operator of the front bus in question to exercise the highest degree of care to prevent or keep the front bus in question from going backward in a manner and way that would probably injure any person who might be so going between the two busses; and if you find the foregoing, and

"Further find from the evidence that on the occasion in question other persons passed between the two busses, and find that while the plaintiff was passing between the two busses the front bus came backwards and caught the plaintiff between the two busses and that he was injured; and if you further find from the evidence that the operator of the front bus handled and used the appliances thereon used to operate and control the bus so as to cause or allow the bus to go backward in such manner and way as to catch and injure any such person so passing between such busses, and if you further find from the evidence that in so causing or so allowing the bus to go backward and catch and injure the plaintiff, if you so find the defendant, through said operator, failed to exercise the highest degree of care to keep the bus from so going backward, and find that in so causing or allowing it to go backward, the defendant was negligent under the facts and circumstances in evidence; and

"If you further find from the evidence that such negligence of the defendant, if you so find, directly caused the bus to go backward and to catch the plaintiff between the two busses, and that the plaintiff was thereby injured, then it would be your duty to render a verdict for the plaintiff and against the defendant; unless you

found against the plaintiff on the theory of contributory negligence as submitted and explained in other instructions.''

Two of the objections urged against the instruction are:

(a) That it erroneously predicated a duty on the part of defendant toward persons going between busses upon a finding that for a period of months ''some of the persons'' meaning or intending to board such busses passed between standing busses;

(b) That it erroneously advised the jury that as a matter of law defendant owed a duty to exercise the highest degree of care toward people going between busses, if within defendant's knowledge ''some persons'' had gone between busses in previous months.

We think the instruction not erroneous in the respects thus charged, and for these reasons: The driver of a motor vehicle has the duty to exercise the highest degree of care at all times and places to prevent injury (RSMo 1949, § 304.010, V.AMS; Steger v. Meehan, (Mo.) 63 S.W. 2d 109, 110), so, under the statute, the bus operator was required to exercise that degree of care to prevent the bus from going backward and injuring persons. Such was the hypothesis of paragraph 3, and it was submitted conjunctively with the ''some-of-the persons'' findings of paragraph 2. The effect, then, of requiring the latter was to put upon plaintiff an additional and [610] unnecessary burden. Being unnecessary, and submitted in the conjunctive, such submission is not to be regarded prejudicial to defendant.

It is further objected that the instruction gave the jury a roving commission to find that defendant negligently caused or allowed the bus to go backward and to return a verdict for plaintiff upon any theory it might devise and without submitting facts that would support such a conclusion. A like contention was made in Jones v. Central States Oil Co., 350 Mo. 91, 98-103, 164 S.W. 2d 914, 916-920, where the allegations of negligence on which the cause was submitted were so strikingly similar to those in the case at bar as to be almost identical. The required finding there was that ''defendant carelessly and negligently caused, allowed and permitted said transport truck, * * * to run into, strike and into collision with the rear end of said pickup truck plaintiff was driving,'' etc. The instruction was held to be a proper submission of specific negligence, and was not erroneous as giving the jury a roving commission. This case is obviously governed by the same principles as there enunciated and applied, and not by such readily distinguishable cases as Yates v. Manchester, 358 Mo. 894, 217 S.W. 2d 541; Green v. Guynes, (Mo.) 235 S.W. 2d 298; Dahlen v. Wright, (Mo.) 235 S.W. 2d 366, and cases of similar import on which defendant relies. See, also, State ex rel. Spears v. McCullen, 357 Mo. 686, 210 S.W. 2d 68. The instruction is not vulnerable in the respects charged.

We are satisfied with and approve the opinion of the Court of Appeals in all particulars other than on the juror question, as to which matter alone the opinion is quashed. From what has been said, it follows that the judgment of the trial court should be, and it is, affirmed.

*Tipton, Dalton, Hollingsworth* and *Hyde, JJ.*, concur; *Conkling, J.*, dissents; *Ellison, C.J.*, not sitting.