Etta TIMMONS, Appellant,

v.

Edwin KILPATRICK, Respondent.

No. 47602.

Supreme Court of Missouri,

Division No. 2.

March 14, 1960.

————◆————

Gray & Jeans, St. Louis, for appellant.

G. W. Marsalek, Moser, Marsalek, Carpenter, Cleary, Jaeckel & Hamilton, St. Louis, for respondent.

STORCKMAN, Judge.

This is an action for personal injuries alleged to have been sustained by the plaintiff when she came in contact with defendant's automobile and fell to the pavement at an alley and sidewalk intersection adjacent to the building occupied by the offices of the Board of Election Commissioners in the City of St. Louis. The jury found in favor of the defendant. The plaintiff's motion for a new trial was overruled and she has appealed. The prayer of plaintiff's petition is for damages in the sum of $25,-000. The sole question presented on appeal is whether the giving of defendant's instruction on contributory negligence was prejudicially erroneous.

Both parties and the witnesses served as polling officials in connection with an election held in the City of St. Louis on March 18, 1958. The polls closed at 7 p. m. and about an hour later numerous polling officials were undertaking to deliver their supplies, records and returns to the offices of the Board of Election Commissioners at 212 South Twelfth Street. The building housing these offices is located on the east side of Twelfth Street. The concrete sidewalk in front of the western entrance to the building is about 24 feet wide; on the building's south side is an alley estimated to be 16 or 18 feet in width. The plaintiff, a woman 83 years of age, had served as an election judge. After her polling place had closed and the tabulation had been completed, the plaintiff went by automobile to the offices of the Election Commissioners, accompanied by Mrs. Bernice Brewer, another election judge, and a policeman, guarding the officials and the election returns. The plaintiff and her companions alighted in front of the building and joined a large crowd of other polling officials who were trying to get into the offices to make their returns. The plaintiff was on the sidewalk at or near the north side of its intersection with the alleyway; she, with the rest of the crowd, was pushing toward the entrance to the building.

The defendant, also an election judge, had driven his automobile to the vicinity of the offices of the Board of Election Commissioners accompanied by Stanley Konopka, another election officer, and Robert Hartman, a police officer. The defendant drove north on Twelfth Street and after he crossed Clark Street he was forced to make numerous stops because of heavy traffic and people running in front of his automobile. When he arrived at the alleyway he started to make a right turn into the alley to go east to a parking lot located behind the Election Commissioners Building. He started over the sidewalk crossing but stopped his automobile because a number of people were passing in front of the car from the south to the north. After a while a policeman stationed at the crossing stopped the pedestrian traffic and motioned for the defendant to drive east into the alley. After looking to his right and left the defendant started slowly forward. His automobile had moved a short distance when the left front fender came in contact with the plaintiff. She fell to the pavement and was injured.

The testimony as to plaintiff's position and movements just prior to and at the time she came in contact with the automobile presents the chief conflict in the evidence. The plaintiff testified that she was standing on the sidewalk near the front door of the building carrying the flag and a bag; that she was facing north at the time of the collision and did not step backwards into and against the defendant's automobile. Her companion, Mrs. Brewer, testified that immediately prior to the accident the plaintiff was standing slightly behind her and to her right. There were a number of people in front of them, all trying to get into the building. Mrs. Brewer heard a thump and looking around saw the plaintiff lying in the alleyway. Neither the plaintiff nor Mrs. Brewer saw the defendant's automobile before the accident.

The defendant testified that he had made the right turn into the alleyway and his automobile was partially on the crosswalk when he halted to permit the people to pass in front of him; that a police officer stopped the pedestrian traffic and signaled the defendant to proceed into the alley; that he looked to his right and to his left and had started forward; that he was moving "very, very slowly" and had not gone more than four feet when he saw the plaintiff moving backwards toward the left side of his car; that he immediately applied his brakes and came to a complete stop within two feet; and that the plaintiff backed into the left fender of his automobile about a foot behind the headlight and fell to the pavement. The defendant further testified that he was traveling in about the center of the alleyway and that the plaintiff was in the north part of the alleyway. At the time of the impact his automobile was barely moving, "about a snail's pace." The defendant did not sound his horn at any time, although numerous horns of other automobiles were being sounded.

The defendant's companion, Stanley Konopka, testified that the defendant drove his automobile about halfway into the alley before he was stopped by the crowd; that

the defendant moved his automobile very slowly when the police officer signaled him to go ahead; that he saw the plaintiff step backwards and shouted a warning at the same time the defendant applied his brakes; that the plaintiff was about two feet from the automobile when he called out; that she stepped back and came in contact with the left front of defendant's vehicle; and that the impact occurred in the driveway where it crosses the sidewalk.

Robert Hartman, the policeman riding in defendant's automobile, testified that the defendant started his automobile very slowly when the police officer on the south side of the alley signaled him to come forward; that the plaintiff made a backward movement and came in contact with the left side of defendant's automobile just back of the front end. The headlights were on, the defendant's automobile was "just crawling at a very, very slow pace" and the defendant stopped immediately.

The plaintiff contends that the trial court erred in giving Instruction No. 2 on contributory negligence because (1) the instruction placed on the plaintiff an absolute duty to look and see the defendant's automobile and to realize the danger of collision instead of imposing a duty to exercise ordinary care, and (2) the instruction failed to hypothesize sufficient facts in submitting the issue of whether the plaintiff negligently stepped backwards into and against the defendant's automobile.

The instruction of which the plaintiff complains reads as follows:

"The Court instructs the jury that on the occasion mentioned in evidence plaintiff was required to exercise ordinary care for her own safety, that is, such care as would be used by an ordinarily careful and prudent person under the same or similar circumstances; and a failure on her part to exercise such care would constitute negligence on her part.

"In this connection the Court further instructs you that if you find and

believe from the evidence that on the occasion mentioned in evidence plaintiff was on the east sidewalk of Twelfth Street in the City of St. Louis, and in or in close proximity to a driveway or alley which crossed said sidewalk immediately south of the Board of Election Commissioners Building, and that defendant operated his automobile generally eastwardly on said driveway and partly into the intersection of the alley and the sidewalk and stopped; and if you further find that defendant then slowly approached and started to pass behind plaintiff, and that plaintiff, without looking back, moved backward and into and against the side of the left front fender of defendant's automobile, and was thereby caused to fall to the sidewalk· or driveway; and if you further find and believe that, under all the circumstances there existing, in so stepping backward plaintiff failed to exercise ordinary care for her own safety and was negligent, and that such negligence, if any, on plaintiff's part directly contributed to cause her to fall and be injured, then the Court instructs you that you cannot find for plaintiff under Instruction No. *One,* and you should find the issues under that instruction in favor of the defendant."

Instruction No. 1, above referred to, submitted an issue of primary negligence,— defendant's failure to maintain a careful, constant, and vigilant lookout ahead and laterally for persons "in said driveway". The issue of defendant's humanitarian negligence was submitted in another instruction, but we are here concerned only with the instruction on contributory negligence.

Plaintiff expresses her primary complaint against Instruction No. 2 in this fashion: "This instruction erroneously placed upon plaintiff the absolute duty of looking and seeing defendant's approaching automobile and of realizing that there was danger of coming into contact with defendant's automobile, whereas, under the law, plaintiff was only required to exercise ordinary care." The essence of this contention seems to be that the instruction assumes the existence of a duty on the part of the plaintiff to look before stepping into the alley rather than hypothesizing "the facts so that the jury could reasonably find that a duty rests upon plaintiff to look before she stepped and that she knew, or, in the exercise of ordinary care should have known, and realized the dangers incident thereto." The plaintiff places her chief reliance upon Freeman v. Myron Green Cafeterias Co., Mo., 317 S.W.2d 303, and Stakelback v. Neff, Mo.App., 13 S.W.2d 575. In the Freeman case the plaintiff fell when she caught her toe under the leg of a clothes tree in defendant's cafeteria. The court held that plaintiff's failure to look where she stepped when she removed her coat from the clothes tree was not the act of omission which the jury could find constituted proximate negligence, but that, in order to convict the plaintiff of contributory negligence, the jury should have been required to find *"that plaintiff failed to exercise ordinary care for her own safety* in failing to so look as to observe the details of the construction of the clothes tree and thereby recognize a danger to herself if she ignored the consequences of that construction." 317 S.W.2d 309. In the present case the danger does not arise out of any peculiarity of construction. Walking into the side of one make or model of moving automobile presents the same prospect of serious injury to the pedestrian as a similar contact with any other kind. The Stakelback case involved a collision between two automobiles at an intersection. An instruction was held erroneous because it required·the defendant to take evasive action upon his seeing the other automobile rather than upon the first appearance of danger. Under the undisputed facts of this case a backward glance would have revealed not only the defendant's automobile but the immediate danger of collision if the plaintiff stepped back.

■ An alley in a municipality is a highway or public thoroughfare within the meaning of the state's traffic regulations and the statutory rules of the road. Section 304.025 RSMo 1949, V.A.M.S., Laws 1953, p. 587, § 1; Section 301.010(6) RS Mo 1949, V.A.M.S., as reenacted Laws 1951, p. 695, § 1.

■ In the absence of a statute or ordinance providing otherwise, the duties of motorists and pedestrians using public roadways and crosswalks at intersections are mutual and reciprocal with neither having a superior or exclusive right. Dempsey v. Horton, 337 Mo. 379, 84 S.W.2d 621, 626[13]; Sullivan v. Kansas City Public Service Co., 241 Mo.App. 56, 231 S.W. 2d 822, 825[3], and 363 Mo. 68, 248 S.W.2d 605; Smart v. Raymond, Mo.App., 142 S.W.2d 100, 103[2]; Wyler v. Ratican, 150 Mo.App. 474, 131 S.W. 155, 157[9]. In Dempsey v. Horton, this court, speaking of pedestrians and motorists on public highways, stated: "So far as primary negligence is concerned, the obligation to exercise due care remains mutual and reciprocal. One may not disregard the laws of prudence and exact of others a primary obligation to protect him against his lack of caution." [337 Mo. 379, 84 S.W.2d 626.]

■ In the exercise of ordinary care for his own safety a pedestrian on or crossing a public street or highway is required to maintain a reasonable lookout for vehicular traffic and a failure to do so may constitute negligence. McKenna v. Lynch, 289 Mo. 16, 233 S.W. 175, 177[3]; Dempsey v. Horton, 337 Mo. 379, 84 S.W.2d 621, 626[16]; Danzo v. Humfeld, Mo., 180 S.W. 2d 722, 726[6]; Blashfield, Cyclopedia of Automobile Law and Practice, Vol. 2A, Permanent Edition, § 1471, p. 348. In McKenna v. Lynch this court said: "While a pedestrian has the right to assume that drivers of automobiles will be on the lookout for him, he is also required to be on the lookout for them, and in all cases is bound to exercise ordinary care for his own protection, according to the circum-

stances of the situation in which he finds himself." [289 Mo. 16, 233 S.W. 177.] In the Dempsey and Danzo cases, pedestrians were held contributorily negligent as a matter of law for failure to look for traffic while on or crossing streets. In each of the following cases a pedestrian was held guilty of negligence precluding recovery as a matter of law because without looking he walked into the side of an automobile at an intersection even though the pedestrian may have had the right of way: Zamora v. Shappley, 27 Tenn.App. 768, 173 S.W.2d 721; Rutter v. Norman, La.App., 189 So. 609, and Estill v. Berry, 193 Wash. 10, 74 P.2d 482.

The legal situation presented by Instruction No. 2 is well expressed in Blashfield, Cyclopedia of Automobile Law, Vol. 2A, § 1395, p. 269, as follows: "While one using a public street is charged with the duty of observing approaching vehicles, this duty is qualified, * * *, by the more general rule that, except in cases where the law itself fixes a standard of care, negligence is always relative and to be determined in view of all the circumstances of the particular case."

The format of plaintiff's Instruction No. 1 and defendant's Instruction No. 2 is remarkably similar. The first paragraph of each defines negligence and the degree of care applicable to each party. Each proceeds on the theory that the collision occurred *in the driveway* and that a failure to maintain a lookout may constitute negligence. Neither instruction requires a jury finding of the existence of the duty to maintain a lookout. See Moore v. Ready Mixed Concrete Company, Mo., 329 S.W.2d 14, 25[11].

■ The evidence on both sides leaves no doubt that defendant's automobile was in a position to endanger the plaintiff if she moved backwards and that she could have seen the automobile and appreciated the danger if she had looked. Under the circumstances the instruction was not erroneous in placing on the plaintiff the duty of looking before she stepped backward

923

into the driveway. Horrell v. St. Louis Public Service Co., Mo., 277 S.W.2d 612, 615[4, 5]; Sullivan v. Kansas City Public Service Co., 363 Mo. 68, 248 S.W.2d 605, 609; LeGrand v. U-Drive-It Co., Mo., 247 S.W.2d 706, 711[7]. As appears from the authorities heretofore cited and as will be further apparent in the discussion of plaintiff's second point, the matters which the plaintiff says should have been included were evidentiary facts, not essential to the hypotheses of the instruction, but which, on the other hand, were not excluded from the jury's consideration in connection with the overall determination of whether the plaintiff was guilty of contributory negligence.

Plaintiff's other contention is that the instruction is erroneous for failure to hypothesize the facts making up the circumstances referred to in that part of the instruction reading as follows: "and if you further find and believe that, under all the circumstances there existing, in so stepping backward plaintiff failed to exercise ordinary care for her own safety and was negligent". The plaintiff's specific complaint is that this part of the instruction should have submitted facts in evidence such as whether several persons, including the plaintiff, crossed in front of defendant's automobile while it was stopped in the alleyway so as to give plaintiff an opportunity to observe the car, whether horns were being sounded, whether defendant was stopped several minutes waiting for the alleyway to clear, and whether the alley was free of cars immediately before the accident.

The key fact in dispute and submitted in the instruction is whether the plaintiff stepped backwards into the side of the car without looking. Plaintiff's basic assertion is that she was pressing forward in the crowd; that she did not step back and, therefore, had no occasion to look behind her. In her direct examination the plaintiff made her denial that she stepped back in this manner:

"Q. Now, then, Mrs. Timmons, there has been some statements made that you stepped back into this automobile at the time of the collision. Did you step back? A. I did not.

"Q. Were you standing still? A. I wasn't one of them kind to step back. When I go to a rummage sale, I push in; I never was used to pushing back at nothing.

"Q. Were you standing still at the time this collision occurred? A. I was standing trying to get in the door; I was paying attention to that; I didn't look at anybody, and I don't know if I knew anybody, and I don't know a thing about it."

The plaintiff relies upon Dahlen v. Wright, Mo., 235 S.W.2d 366, and Kimmich v. Berry, Mo., 319 S.W.2d 546. The Dahlen case, following Yates v. Manchester, 358 Mo. 894, 217 S.W.2d 541, dealt with an instruction submitting speed generally, although the evidence as to speed and the attending circumstances was conflicting. The rule of the Yates case and others following it has been held not applicable where the evidence does not present two conflicting factual theories, only one of which would authorize a verdict in favor of the party for whom the instruction was given. Sullivan v. Kansas City Public Service Co., 363 Mo. 68, 248 S.W.2d 605, 610[4]; Knight v. Richey, 363 Mo. 293, 250 S.W.2d 972, 977; Wirth v. St. Louis County Transit Co., Mo.App., 253 S.W.2d 547, 551; Block v. Rackers, Mo., 256 S.W. 2d 760, 764. Kimmich v. Berry is also a case where there is a sharp divergence in facts not hypothesized.

What was said in Nydegger v. Mason, Mo., 315 S.W.2d 816, 819, is apposite here: " * * * an omitted hypothesis of the nature of which plaintiff complains is but an evidentiary circumstance, and not an essential element of a case predicated upon primary negligence in failing to keep such a lookout." See also Horrell v. St. Louis Public Service Co., Mo., 277 S.W.2d 612,

615[3], and Witt v. Peterson, Mo., 310 S.W.2d 857, 860[5].

The instruction is not vulnerable in the respects charged. Accordingly the judgment is affirmed.

LEEDY, P. J., EAGER, J., and ELMO B. HUNTER, Special Judge, concur.