Clarence HOPPER and Mrs. Clarence Hopper, Parents and Natural Guardians of Glenn T. Hopper, Appellants,

v.

Geraldine Louise CONROW, Administratrix of Estate of Wm. Glenn Conrow, Respondent.

No. 48315.

Supreme Court of Missouri,

Division No. 1.

July 10, 1961.

---

W. F. Daniels, Fayette, for appellants.

Thos. J. Conway, Jr., Deacy & Deacy, Kansas City, Marion E. Lamb, Moberly, for respondent; Popham, Thompson, Popham, Trusty & Conway, Kansas City, of counsel.

HOUSER, Commissioner.

On April 17, 1957 at about 8:45 p. m. an automobile carrying six young men ran downhill on Commerce Street in Glasgow,

over the railroad tracks and into the Missouri River. Only one person survived. Among the victims was Glenn T. Hopper, age 20, the owner of the car, and Wm. Glenn Conrow, age 23, who was driving the car. Hopper's parents brought suit against the administratrix of Conrow's estate for $25,000 damages for the death of their son. Plaintiffs appeal from an adverse judgment following the return of a jury verdict for defendant.

The petition charged that while Glenn T. Hopper was riding as a passenger and guest in an automobile owned by him, operated by and in the exclusive control of Conrow, the latter drove and operated the automobile in such a negligent manner that it ran off the traveled portion of Commerce Street and plunged into the Missouri River. The answer pleaded that Hopper had control or the right to control the automobile, and that Hopper drove or caused it to be driven in an unsafe manner or negligently failed to protest the manner in which his automobile was being operated, and failed to take any affirmative action to prevent the casualty, or negligently rode in his automobile while it was being driven by an incompetent person.

Shortly after 7:30 p. m. on the night in question the Hopper boy encountered four high school boys, and took them for a ride in his Ford automobile. Later he picked up Conrow. Hopper drove the five boys around town. Shortly before 8:45 p. m. he stopped the car in the grade school yard for a minute or two. At Conrow's request, Conrow was permitted to drive. With Conrow at the wheel the ride resumed. Hopper was seated in the front seat immediately next to Conrow. They drove from the school yard to Commerce Street, which leads downhill to the river; a steep slope which gets steeper as one approaches the river. At each cross street there is a dip caused by the level cross streets. The automobile turned into Commerce Street 784 feet from the river bluff. It traveled several blocks straight downhill on Commerce Street, over the 42-foot bluff and into the river. Conrow drove the car at a speed of 30 m. p. h. in the first block, sped up in the second block, increased his speed when halfway down the hill and traveled the last three and a half blocks at a speed of 40–50 m. p. h. Conrow made no effort to turn the car from its straight course, either to the right or left, at any of the several street intersections through which the car passed as it sped downhill. After crossing First Street (the principal downtown thoroughfare in Glasgow) the car traveled 192 feet, crossed Water Street, the railroad tracks, and reached the river bluff, going at a speed of 40–50 m. p. h.; then flew through the air 137 feet (47 feet over river bank below the bluff and 30 yards beyond the bank) and landed in the river upside down. The speed of the car did not decrease any time after it speeded up halfway down the hill. There were no skid marks. There was no evidence that the car was defective.

During the three and a half blocks they traveled 40–50 m. p. h. no one in the car "said anything or did anything." No one protested the speed at which Conrow was driving. "Nobody said 'slow down,' 'watch out', or anything like that." The Hopper boy did not say anything, and no effort was made to turn off the ignition.

There was evidence from which the jury could have found that the Hopper boy had a half pint bottle of whiskey in a sack on the front seat beside him; that one Robertson took one drink from the bottle at 7:30 p. m. and that when Robertson got out of the car the bottle on the seat beside Hopper was still almost full; that Conrow drank a third of a half pint bottle of whiskey straight with no chaser an hour or so before the accident; that sometime after 8 p. m. Conrow drank 3 or 4 glasses of beer in Tip Top Cafe; that Conrow's speech was slurred; that Conrow took a drink of whiskey across the street at the D-X Service Station (30 minutes before the fatality); that Conrow tried to play pool, but was in no condition to play; was staggering and unsteady, and his con-

versation did not make sense. A witness who drank with Conrow occasionally noticed a difference in his speech indicating that Conrow had had something to drink; he was quiet, which was characteristic of Conrow after a few drinks.

Appellants' first point is that the Court erred in giving Instruction D–4 because the evidence did not warrant or justify the giving of a contributory negligence instruction and for errors in its form and content. Instruction D–4 follows:

"The Court instructs the jury that if you find and believe from the evidence that on the occasion mentioned in evidence Glenn T. Hopper was the owner of the automobile involved in the casualty described in evidence and if you further find and believe from the evidence that on the evening of April 17, 1957, William Conrow had been drinking intoxicating liquors and by reason thereof, his ability to prudently drive an automobile was impaired, if you so find, and if you further find that Glenn T. Hopper knew or in the exercise of ordinary care for his own safety, should have known of the aforesaid facts, if you find them to be facts, and that thereafter Glenn T. Hopper carelessly and negligently allowed and permitted William Conrow to drive his automobile, if so, and if you find that Glenn T. Hopper carelessly and negligently rode in said automobile while same was being driven by William Conrow, if so, and if you further find that said automobile was thereafter operated by William Conrow west on Commerce Street at a high and dangerous rate of speed under all of the facts and circumstances then and there existing, if so, and that Glenn T. Hopper negligently failed to timely protest to Conrow about the manner and speed at which said automobile was being operated, if so, and negligently failed to take any affirmative action to influence the manner in which said automobile was being operated by Conrow, if so, and if you further find that the aforesaid negligence, if any, of Glenn T. Hopper directly caused or directly contributed to cause the death of Glenn T. Hopper, then your verdict must be for the Defendant."

Appellants urge that the evidence did not warrant giving a contributory negligence instruction; that the duty to warn must be considered as of the time the danger presents itself and that recovery is to be denied on this ground only if Hopper failed to warn after danger became reasonably manifest or known to him, citing Trump v. Ballinger, Mo.Sup., 317 S.W.2d 355, 358; that Conrow did not drive in such a manner as to evoke a protest and "the operation of the car did not become dangerous until he passed over the railroad tracks. Then it was too late * * * Hopper [then] would not even have his ¾ of a second reaction time"; that until that time, i. e., until Conrow failed to make the last turn (the turn onto Water Street, the roadway immediately adjacent to the railroad tracks, some 23 feet from the river bank), Hopper was not charged with notice that Conrow did not intend to turn aside from the straight course into the river or of his danger; that in any event Hopper would not have been on notice until the car passed and did not turn at First Street (192 feet from the river bank), at which place Hopper "would have about 3 seconds to protest, remonstrate or do something"; that Hopper had no time or opportunity to do anything to avoid or protect himself against the accident, at either time or place; and that there was no evidence that the accident could have been avoided by a timely warning, citing Dawley v. Hoy, Mo.Sup., 341 S.W.2d 111, 116. Appellants further argue that Hopper's failure to protest or warn Conrow could not have been the proximate cause because "To have warned Conrow, or timely protested would have told Conrow nothing that he did not already know or see," citing Buchler v. Festus Mercantile Co., 343 Mo. 139, 119 S.W.2d 961, 965; and

Fann v. Farmer, Mo.App., 289 S.W.2d 144, 149. Further, they say the evidence was insufficient to support the submission of the impairment of Conrow's ability to prudently drive an automobile, or Hopper's knowledge of Conrow's impairment from drinking; and insufficient to support the submission of "a high and dangerous rate of speed." Other criticisms are that D-4 imposed a duty on Hopper to act irrespective of when the duty arose; failed to instruct that he was under no duty to act until after he had knowledge or appreciation of the danger of an accident; failed to hypothesize facts; gave the jury a roving commission on the speed issue; failed to require a finding that the high speed existed at the time of the accident; required Hopper to take "affirmative action" without specifying what action he could or should have taken; failed to require a finding that by taking such affirmative action the accident could have been avoided, and assumed that such action would have avoided the accident.

■ The question of Hopper's contributory negligence is to be determined under the standards applicable to a guest passenger, in view of the manner in which that issue was pleaded and submitted. When dangers, known or reasonably manifest to a guest, confront the driver of an automobile, and the guest has an adequate and proper opportunity to control or influence the situation for safety, he will be deemed guilty of negligence barring a recovery if he sits by without warning or protest and permits himself to be driven carelessly to his injury. Thurman v. St. Louis Public Service Co., Mo.Sup., 308 S.W.2d 680, 684, and authorities cited. We are unable to follow appellants' argument that Hopper was not charged with notice of danger until Conrow failed to turn at Water Street (only 23 feet from the river bluff), or at First Street. The point at which danger from the manner in which Conrow was driving should have become reasonably manifest to Hopper was a jury question. Under the circumstances recited we cannot declare as a matter of law that danger did not arise or that Hopper had no duty to warn or act before the car reached First Street. On the contrary, there was sufficient evidence from which the jury reasonably could have found that there was a manifest and imminent danger of injury and a visible lack of caution on Conrow's part when, halfway down the long incline (at a point approximately 390 feet from the river bluff) Conrow, whose ability to drive prudently had been impaired by the use of intoxicants, increased the speed of the car from 30 to 40–50 m. p. h. at a place in the downward descent where the hill becomes more steep, and with the prospect confronting him of either running into the river or having to negotiate a 90-degree left hand turn into First Street at an excessive rate of speed. There was ample evidence to support a finding that Conrow drank enough whiskey at a time sufficiently close to 8:45 p. m. to affect his ability to drive prudently and that this impairment contributed to cause the accident. There was sufficient circumstantial evidence of Hopper's knowledge of Conrow's condition: When Conrow got in the car he sat in the right front seat. They drove around town for 10 or 15 minutes before Conrow took the wheel. During the time Conrow drove Hopper sat immediately next to him. Hopper had every opportunity, over a sufficient period of time, to observe the indicia of Hopper's intoxication noticed by others, and to form the conclusion that Conrow was in no condition to drive. Appellants stress the testimony of Kirby, the lone survivor, that he did not see Conrow take a drink and that Conrow had no trouble with his speech or gait, but the jury may have disbelieved Kirby on the ground that he was not disinterested (he had filed suit for personal injuries), or on the basis of the sheriff's testimony that on April 18, 1957 Kirby told the sheriff that it appeared that the driver of the car had been drinking. Also, in determining whether there was substantial evidence to support defendant's theory as submitted in the instruction, we must accept as true the evidence favorable

to such theory. Thurman v. St. Louis Public Service Co., supra, 308 S.W.2d loc. cit. 684.

D–4 is not subject to the criticism that it failed to instruct that Hopper was under no duty to act until after he had knowledge of danger or danger of an accident became reasonably manifest to Hopper and that D–4 imposed the duty to act without regard to the time the duty arose. In D–4 the time of protest is related to the time after the automobile, knowingly permitted by Hopper to be driven by one whose ability to drive prudently was impaired, was being operated downhill on Commerce Street toward the river at a high and dangerous rate of speed. Hopper, owner of the car, a healthy young person not shown to have been intoxicated, and presumed to have been in the full possession of his faculties, sat in the front seat of the car during that fatal ride and there is nothing to indicate that he was not fully cognizant of the situation confronting him. In these circumstances, knowledge by Hopper of the danger is implicit in D–4's requirement of a finding of failure to timely protest the manner and speed of operation. It was not necessary to further instruct that Hopper had no duty to act until he had knowledge of danger. Guided by D–4 the jury could not reasonably have imposed upon Hopper a duty to act before the danger from the excessive speed became reasonably manifest to him.

Appellants' criticisms of the basis for and manner of submission of "high and dangerous rate of speed" are not well-founded. The circumstances shout excessive speed to any impartial observer. Since the facts were undisputed and there were no two conflicting factual theories there was no necessity of any more detailed hypothesization of the facts relating to speed. Timmons v. Kilpatrick, Mo.Sup., 332 S.W.2d 918, 923. The time of the excessive speed was sufficiently specified and limited for any juror with reasonable intelligence to understand.

Appellants claim that when the danger presented itself "Hopper was helpless and it was impossible for him to influence, protest, take affirmative action or do anything else that would prevent or even affect the accident," and that D–4 erroneously required Hopper to take affirmative action without requiring the jury to find what action he could or should have taken, and does not require a finding that by protesting or taking affirmative action the accident could have been avoided; that D–4 assumes the latter. Hopper, by reason of his ownership of the car, had the right to control its operation, and an unusual opportunity—far greater than the ordinary passenger—to influence the situation for safety. Thurman v. St. Louis Public Service Co., supra, 308 S.W.2d loc. cit. 685. Considering the speeds and distances in evidence, the jury reasonably could have found that after danger became reasonably manifest Hopper had 4½ seconds or more within which to have protested and that the accident could have been avoided if Hopper had protested when danger of injury became reasonably manifest which, under the evidence, could have been as far back as three and a half blocks—350 to 390 feet—from the river bluff. D–4 submitted two specifications of contributory negligence after danger arose: failure to protest and failure to take any affirmative action. These were submitted in the conjunctive. There was evidence to support failure to protest. Appellants do not contend to the contrary nor do they except to the wording of that specification. The one specification having been in proper form and supported by evidence, the instruction is good even though the other specification, to which it was joined conjunctively, was not supported by evidence, Knox v. Weathers, Mo.Sup., 363 Mo. 1167, 257 S.W.2d 912, 915, or was not in proper form. The jury could find that notwithstanding his right and opportunity to protest Hopper said nothing; did nothing; and permitted himself to be driven carelessly to his doom. There was no error in submitting the defense of contributory negligence.

Nor is D-4 to be condemned for assuming that the taking of affirmative action would have avoided the casualty, or that it failed to require such a finding. A failure to protest and take such action, under D-4, constituted negligence, and before the jury could return a verdict for respondent it had to find that that negligence directly caused or contributed to cause the death of Hopper.

Nor do we subscribe to the suggestion that failure to warn or protest would have availed nothing because a warning would have told Conrow nothing he did not already know. The jury was entitled to consider that Conrow's perception and realization of danger was dulled by intoxication, and that a warning or protest in time would have awakened him to the danger in time to have taken effective action to avert injury.

■ Next, appellants make the point that the court erred in admitting the testimony of the night policeman, Rose, as to the activity and manner of operation of the Hopper car some 30 to 45 minutes prior to the accident: specifically, that at that time the Hopper car was parked in Glasgow; that Rose tried to stop the Hopper car and "throwed a flashlight on the car", and that the car did not stop. Appellants urge that this evidence was irrelevant and inadmissible for any purpose, misleading, and prejudicial in that it kindled the flame of suspicion and insinuated that the boys were engaging in improper activities. Respondent asserts that the evidence was admissible "on the very vital issue of the condition of Conrow when he climbed into the Hopper car and whether or not any drinking was taking place in the automobile * * * whether or not it showed that the occupants of the Hopper car were on a drinking spree." Rose also testified that Conrow had been standing in front of the picture show with a bottle of 7-Up in his hand; that he saw Conrow get into the car; that the car was already moving when Rose turned the flashlight on it; that it drove off "slowly, just like anybody else," and that Rose did not know whether the driver of the car (not identified) saw the light or not. There was no proof that the driver realized that an officer was attempting to flag him down. It is not claimed that the failure of the unidentified driver to stop the car was deliberate or that it indicated any intentional disregard for authority. The manner in which the car moved away tends to negative such conclusion. The evidence objected to does not indicate general recklessness, negligent driving, or "hot-rod" activities. The state of mind of the driver was not in issue, as in State v. Feger, Mo.Sup., 340 S.W.2d 716. There is no basis for appellants' fear on appeal that this evidence engendered suspicion and insinuated wrongdoing. Apparently appellants' counsel had no such fear at trial time, for the objection then made was that the evidence was irrelevant and too remote in point of time (not that it was prejudicial because it aroused suspicion and implied wrongdoing). On the other hand, we do not agree with respondent's attempt to justify the admission of this evidence. There is nothing about the entry of Conrow into the car with a bottle of 7-Up in his hand, or the manner in which the car moved away, that bears upon the question of Conrow's sobriety or indicates that he and the occupants of the car were engaged in a "drinking spree." Respondent's contention that the jury could infer that "the other boys were mixing drinks or using 7-Up as a chaser" is as far-fetched as it is irrelevant. Actual proof that the "other boys" were drinking, under the circumstances in evidence in this case, would have been irrelevant upon the issue whether Conrow was negligent or Hopper contributorily negligent. We conclude that no prejudice to the rights of appellants by

the admission of this evidence has been shown; that the testimony objected to is one of those bits of innocuous and inconsequential evidence with which nearly every transcript is encumbered; that its admission had no bearing either way on the outcome of the litigation.

■ Finally, appellants claim error in permitting Sheriff Wells to testify that he "believed" that Kirby, the lone survivor, told him at the hospital the next morning that there was a bottle of whiskey in the car, and "believed" that Kirby stated that it appeared that the driver had been drinking. Appellants cite Armstrong v. Croy, Mo. App., 176 S.W.2d 852, 853, for the proposition that when a witness testified that he "believes" so and so to be the case, his testimony is objectionable and should not be received, for it is of no probative force or evidential value. The transcript does not show that any objection was made to this evidence. Appellants may not have appellate review of such a point where the transcript shows no objection to the testimony and consideration of the point is neither invoked nor justified under our Rule 79.04, V.A.M.R. Faught v. Washam, Mo.Sup., 329 S.W.2d 588.

The judgment is affirmed.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.